[Civ. No. 24775.   Second Dist., Div. Two.   Nov. 16, 1960.]

EDWIN H. KRAUSE, Appellant, v. DANIEL APODACA, Respondent.

Simon, McKinsey & Miller for Appellant.

Nathan Harris Snyder for Respondent.

ASHBURN, J.—Plaintiff appeals from the judgment based upon a jury verdict for defendant in an action brought by him as landlord against his tenant for damages for negligence causing a fire in the leased premises to plaintiff's damage in the stipulated sum of $4,851.02. Plaintiff claims insufficiency of the evidence and prejudicial errors of law.

In 1949 defendant became plaintiff's lessee of property known as 4737 Gage Avenue, in the city of Bell, and so continued until the time of the fire. Defendant at the time of lease was blind and has been so at all times since 1941. A painter by trade, he conducted upon the leased premises a retail and wholesale paint store wherein he continued through the sense of feeling to do varnishing, painting and similar work. In a storeroom in the back of the building was an electric hot plate which defendant used for heating and thinning varnish from time to time. On the day of the fire, November 22, 1958, he was doing some varnishing and used the hot plate to warm and thus thin the varnish. This continued until about five minutes before closing, at which time he had a can of varnish upon the hot plate warming it. He did not then realize how late it was. There were several people in the store and "children were all over." Defendant or his wife suggested closing and he began to do so. He testified that he locked the big sliding door, turned off two switches as he went by, one on the far east wall, then locked the double doors, flicked the switches on the machine as he passed by, threw switches off as he headed toward the front of the store, reached behind some cans and pulled switches there, went into the office and pulled three switches on a panel which was about eight feet behind a refrigerator. It does not appear that the can of

varnish was ever taken off the hot plate. At 5:45 to 6 p. m. the fire was discovered after defendant and his wife had left the premises.

Three witnesses testified at the trial, Officer Marian B. Tatum, Jr., of the Bell Police, Deputy Sheriff William E. Carlberg, and defendant Apodaca. The two officers arrived at the scene about 7:45 p. m. and began an investigation of the cause of the fire. Their qualifications as experts are not challenged.

Officer Tatum testified that he arrived at the opinion that the fire started in the storeroom where a quart can of lacquer was sitting on a hot plate; that it had become hot and boiled over, ignited and started the fire. He also said that he expressed this opinion on the next day to defendant who said he forgot to unplug the hot plate. This alleged admission defendant denied. The officer also said that he could find no shutoff switch on the hot plate; that it was plugged into a wall outlet on the left of the refrigerator, the same one in which the refrigerator was plugged; also that there was no switch near the outlet.

Deputy Sheriff Carlberg explained his investigation methods and said he determined that the origin of the fire was at or near the refrigerator; that a can of lacquer on a hot plate had boiled over and started a blaze. Also there was a cord from the refrigerator to the wall outlet and one from the hot plate. There was no off-switch on the cord and he could find none on the hot plate; that there was no apparent flaw in the wiring from outlet to hot plate; same was intact. His expressed opinion was that the can of lacquer on the hot plate in some way caused the fire. In the can was ash or residue that "smelled more particularly on the lacquer side rather than another type of paint."

Defendant denied none of this testimony except the alleged conversation with Officer Tatum to the effect that he forgot to unplug the plate, the assertion that the refrigerator was electric and, by implication, the statement that the hot plate had no off-switch on it. Defendant did not undertake to explain the cause of the fire in any way. He testified on direct that he was positive he turned off all the switches when he left. On cross-examination he said he did not know whether the lacquer ever was removed from the hot plate and it was possible it was not removed; also that it was not likely that he did not throw off all switches, but possible that he did not do so. Defendant also testified there was no way on the hot

plate itself to turn it off; that the way to cool it would be to throw the switch or unplug it, which statement implies that the plate was plugged into the wall and was also controlled by a switch at some undisclosed location.

We have concluded that the evidence is insufficient to support the verdict. There is no testimony as to the cause of the conflagration except that of the two experts, and no circumstantial proof except that which corroborates their opinions. The record suggests no reasonable explanation of the fire except that expressed by these experts. No question is raised as to their qualifications or their probity. Respondent merely argues that the trial judge was free to reject their testimony. Not so.

*Gomez* v. *Cecena,* 15 Cal.2d 363, 366 [101 P.2d 477]: "While no universal and immutable formula can be prescribed for determining the weight to be accorded testimonial evidence, it has frequently been said that testimony which is not inherently improbable and is not impeached or contradicted by other evidence should be accepted as true by the trier of fact."

*Joseph* v. *Drew,* 36 Cal.2d 575, 579 [225 P.2d 504]: "It is the general rule that 'the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted as proof of the fact.' (10 Cal.Jur. § 362, p. 1143; *Estate of Warner,* 167 Cal. 686, 690 [140 P. 583]; *Hynes* v. *White,* 47 Cal.App. 549, 552 [190 P. 836].)"

Witkin on California Evidence, section 198, page 219: "It is sometimes said that the jury or trial court may reject the conclusion of an expert even though it is uncontradicted. [Citations.] This does not mean, however, that the uncontradicted and unimpeached opinion testimony of an expert may be arbitrarily disregarded; the rule in this respect is the same as that which applies to uncontradicted testimony of an ordinary witness." To the same effect see *Wirz* v. *Wirz,* 96 Cal.App.2d 171, 176 [214 P.2d 839, 15 A.L.R.2d 1129]; *Estate of Kuttler,* 160 Cal.App.2d 332, 337 [325 P.2d 624]; *Teich* v. *General Mills, Inc.,* 170 Cal.App.2d 791, 800 [339 P.2d 627].

The closest approach to overthrowing the opinions of the experts lies in the defendant's testimony that the way to cool the hot plate would be to throw the switch or unplug it, thus implying the existence of a switch at some unspecified place which would control the supply of current to the plate. The effect of the experts' testimony is to rule out any such switch and confine control of the plate to inserting or with-

drawing the plug from the wall socket. Of course, defendant's version must be accepted in aid of the verdict, but when this is done it fails to advance his cause for it leaves the record devoid of any reasonable explanation or suggestion of the cause of the blaze except the failure of defendant to throw all switches before he left, a thing he confessed to be possible. His blindness could have no exculpatory effect upon this oversight; he knew exactly what he was doing and how to do it. (*Cf.* 35 Cal.Jur.2d, § 84, p. 593; 65 C.J.S., § 142, p. 783; Prosser on Torts, 2d ed., p. 126.)

■■ *Eramdjian* v. *Interstate Bakery Corp.*, 153 Cal.App. 2d 590, 602 [315 P.2d 19] : ''It is axiomatic that 'an inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork.' (18 Cal.Jur.2d 480.)''

■ *Reese* v. *Smith*, 9 Cal.2d 324, 328 [70 P.2d 933] : '' 'A judgment cannot be based on guesses or conjectures. (*Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363 [64 P. 480].) And, also, ''A finding of fact must be an inference drawn from evidence rather than on a mere speculation as to probabilities without evidence. A majority of chances never can suffice alone to establish a proposition of fact, since the slightest real evidence would outweigh all contrary probabilities.'' (23 Cor. Jur., § 1750, p. 18.)' ''

■ *Sweeney* v. *Metropolitan Life Insurance Co.*, 30 Cal. App.2d Supp. 767, 772 [92 P.2d 1043] : ''An inference is a deduction which the reason of the jury makes from the facts proved. (Code Civ. Proc., § 1958.) It is not a mere conjecture or an arbitrary *dixit* without reason and without factual support.''

■■ What constitutes substantial evidence, as distinguished from mere possibility or speculation, is clarified in the following passage from *Estate of Teed*, 112 Cal.App.2d 638, 644 [247 P.2d 54] : ''The sum total of the above definitions is that, if the word 'substantial' means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case.''

■ *Fewel & Dawes, Inc.* v. *Pratt*, 17 Cal.2d 85, 89 [109 P.2d 650] : ''If, however, the evidence is so slight and tenuous that it does not create a real and substantial conflict the find-

ing may be set aside. (*Ibid.*) 'There must be more than a conflict of words to constitute a conflict of evidence. The contrary evidence must be of a substantial character, such as reasonably supports the judgment. . . .' "

The mere inference, suggested by defendant's testimony, that there was a switch which controlled the plate and that it was thrown to "off" as he closed the shop, cannot prevail over the clear evidence that failure to disconnect the hot plate in some manner was the proximate cause of the conflagration.

*Leonard* v. *Watsonville Community Hospital*, 47 Cal.2d 509, 515 [305 P.2d 36] : "It is settled that where the evidence raises an inference that a fact exists, and either party produces evidence of the nonexistence of the fact that is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved, the nonexistence of the fact is established as a matter of law. (See *Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868].) In these circumstances the inference is dispelled as a matter of law, and, if the fact inferred is necessary to establish an essential element of the plaintiff's case, a nonsuit or directed verdict is proper."

*Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 70 [77 P.2d 1059], also says that "an *inference* is dispelled as a matter of law when it is rebutted by clear, positive and uncontradicted evidence which is not open to doubt, even though such evidence is produced by the opposite side." A different rule applies to a presumption (see p. 517 of Leonard decision, *supra*), but we here deal with an inference.

In *Hicks* v. *Reis*, 21 Cal.2d 654, 659 [134 P.2d 788], the court stated the general rule that: "Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted." But it was further said, at page 660: "To these well settled rules there is a common sense limited exception which is aimed at preventing the trier of the facts from running away with the case. This limited exception is that the trier of the facts may not indulge in the inference when that inference is rebutted by clear, positive and uncontradicted evidence of such a nature that it is not subject to doubt in the minds of reasonable men. The trier of the facts may not believe impossibilities. When the rebutting testimony is of such a nature that the minds of reasonable men cannot differ on the subject, then the trier of the facts cannot, and should not be permitted to, indulge in the inference."

Tested by these criteria the record discloses no evidence or inferences of substantiality which have a tendency to overthrow plaintiff's proof and the judgment must be reversed.

Appellant complains of the court's refusal to instruct upon res ipsa loquitur, the giving of a "mere fact of accident" instruction, one declaring each party entitled to the presumption of due care at the outset of the trial (BAJI 135), and another upon the subject of assumption of risk. If there were apparent any probability of a substantial difference in the evidence upon a new trial we would be disposed to review each of those assignments, but we do not feel so obligated in this instance. These questions will not necessarily arise upon a new trial. (Code Civ. Proc., § 53.) We rest upon the assumption that more mature thought on those subjects by court and counsel will obviate any future claims of error in those areas.

Judgment reversed.

Fox, P. J., and Kincaid, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.