[Civ. No. 15855. Fourth Dist., Div. Two. Dec. 22, 1976.]

ROY OLIVER DIMOND, Plaintiff and Appellant, v.
CATERPILLAR TRACTOR COMPANY et al.,
Defendants and Respondents.

174

**COUNSEL**

Garber, Sokoloff & Van Dyke and John M. Van Dyke for Plaintiff and Appellant.

W. Mike McCray, Daniel L. Stack, Garrett & Dimino and Kenneth R. Garrett for Defendants and Respondents.

**OPINION**

**TAMURA, Acting P. J.**—Plaintiff was injured in an accident involving a towmotor manufactured by defendant Caterpillar Tractor Co. and retailed by defendant Cal-Lift, Inc. Plaintiff brought an action in strict liability alleging that his injuries were proximately caused by certain defects in the towmotor.[1] At the conclusion of plaintiff's case-in-chief,

---

[1] At the commencement of trial, plaintiff dismissed a cause of action based upon negligence.

the trial court granted defendants' motion for a nonsuit on the ground plaintiff had failed to establish a causal nexus between the alleged defects and his injuries. Plaintiff appeals from the ensuing judgment for defendants.

■ As has been so often emphasized, a " 'nonsuit in a jury case . . . may be granted only when disregarding conflicting evidence, giving to the plaintiffs' evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in plaintiffs' favor, it can be said that there is no evidence to support a jury verdict in their favor.' " (*Pike* v. *Frank G. Hough Co.,* 2 Cal.3d 465, 469 [85 Cal.Rptr. 629, 467 P.2d 229], quoting *Elmore* v. *American Motors Corp.,* 70 Cal.2d 578, 583 [75 Cal.Rptr. 652, 451 P.2d 84].) ■ In a products liability case, a plaintiff has met his burden if he establishes that there was a defect in the manufacture or design of the product and that such defect was a proximate cause of the injury. (*Cronin* v. *J.B.E. Olson Corp.,* 8 Cal.3d 121, 133-134 [104 Cal.Rptr. 433, 501 P.2d 1153]; *Foglio* v. *Western Auto Supply,* 56 Cal.App.3d 470, 474 [128 Cal.Rptr. 545].) Those elements—defect and proximate cause—may be established by circumstantial evidence. (*Elmore* v. *American Motors Corp., supra,* 70 Cal.2d 578, 583-584; *Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256, 260 [37 Cal.Rptr. 896, 391 P.2d 168]; *Grinnell* v. *Charles Pfizer & Co.,* 274 Cal.App.2d 424, 435, 438 [79 Cal.Rptr. 369]; *Johnson* v. *Standard Brands Paint Co.,* 274 Cal.App.2d 331, 338 [79 Cal.Rptr. 194].) The critical issue on this appeal is whether it could reasonably be inferred from the circumstantial evidence adduced by plaintiff that the claimed defect, or defects, was a proximate cause of his injury.

The facts may be summarized as follows: on March 15, 1972, plaintiff was employed by Moore Business Forms, Inc. (Moore) a concern which utilizes packaged rolls of paper in the printing of various business forms. Plaintiff was assigned to transporting large rolls of paper from the warehouse to the various printing presses on the plant by use of a towmotor which is a forklift specially fitted by the manufacturer with clamps to permit the transportation of paper rolls.

The warehouse in which the paper rolls were stored was a large building with a high ceiling. Several rolls of paper were normally bound together into one package which weighed from 900 to 1,500 pounds; the packaged rolls were then stacked in columns 10 to 15 feet high. When a particular bond of paper was needed, the towmotor operator would

ascertain its location and, where necessary, break down the stack to remove the desired package. He would then restack the unused rolls.

Ralph Allen and Henry Egeland, both of whom were assigned to the graveyard shift with plaintiff, testified that between 4 and 5 a.m. on the day of the accident, they heard a loud "boom" in the area where plaintiff was working. Upon investigation, they found plaintiff lying face down four to five feet behind the towmotor; one roll of paper weighing approximately 550 pounds was lying across plaintiff's shoulders and another 550 pound roll was lying on the opposite side of the towmotor; there was a four- to five-inch dent in the overhead protective cage of the towmotor which had not been present when they had begun their shift; the clamp of the towmotor was secured around a stack of papers; and the towmotor was in neutral gear but the engine was still running. Mr. Egeland further testified that shortly before the accident, he had a conversation with plaintiff concerning the type of paper plaintiff was to deliver from the warehouse to the pressroom; that the type of paper discussed was stacked in a particular location in the warehouse; and the scene of the accident was near where that type of paper was stored.

As a consequence of the accident, plaintiff sustained serious injuries including retrograde amnesia which blotted out all memory of the circumstances surrounding the accident. Plaintiff was able to testify, however, that upon being assigned to the towmotor, he had occasion to read both in the operator's manual and upon the towmotor itself a warning which advised the operator that the overhead cage offered no protection against "heavy or capacity loads."[2] Plaintiff also testified that because the propane tank was exposed to falling objects, he feared that something could strike the tank and cause an explosion. He also explained that whenever he would dismount the towmotor, he always placed it in neutral gear and turned off the motor.

Plaintiff next called Jesa Kreiner, an expert both in failure analysis (a discipline which examines the causes of structural fatigue) and human factors analysis (an endeavor which includes the study of warnings and their impact upon a person's conduct). The defense objected to any testimony from Kreiner about defects in the towmotor on the basis that

---

[2]The exact wording of the warning was as follows: "Overhead Guard conforms to ASA-B 56 safety code and is intended to protect the driver, but is not intended to withstand the impact of heavy or capacity loads falling from any height. Obey safety rules."

plaintiff had failed to show that the condition of the towmotor was the same at the time of the expert's examination as it was on the day of the accident. The court recessed the jury to permit discussion on this matter[3] as well as to consider the admissibility of the expert's opinion on causation. Plaintiff urged that in lieu of an offer of proof through counsel the court should hear the testimony of the expert outside the presence of the jury to permit an informed ruling on admissibility. The court acceded to the suggestion with the result that the following testimony of the expert was received out of the presence of the jury in lieu of an offer of proof.

Kreiner testified that the posted warning with respect to the strength of the overhead cage was inadequate and defective in the following respects: (1) the wording of the warning that the cage was not "intended to withstand the impact of heavy or capacity loads"[4] was defectively ambiguous because it failed to provide the operator with any criteria from which he could determine the actual capacity of the overhead guard and (2) the warning was dangerously misleading since it had in fact withstood the impact of an 1,100 pound package. Kreiner stated that the problems posed by the warning could have been alleviated by changing the design of the guard to resemble an A-frame roof thereby affording protection from even a capacity load. The expert also testified that the position of the propane tank rendered the towmotor defective because the manufacturer had failed to insulate it from falling objects which could rupture the tank and cause an explosion.

Plaintiff then asked Kreiner whether he had an opinion whether there was a causal connection between the defects of the towmotor to which he had testified and plaintiff's injury. Kreiner responded that he did have an opinion but, on the defense objection that the opinion called for speculation, he was not permitted to give it. The trial judge observed in substance that plaintiff's theory of liability would require the jury to infer that plaintiff was in the towmotor when the rolls of paper began to fall and to indulge in the further inference that he bolted the machine because of the inadequate and misleading warning concerning the capacity of the protective cage and his concern over the exposed propane tank. The judge held that those inferences were too speculative and conjectural to be permitted to be drawn either by the expert or the jury.

---

[3]The court concluded that this oversight could be cured by recalling Ralph Allen and Henry Egeland, employees of Moore.

[4]The exact wording of the warning is set out in footnote 2, *supra.*

Plaintiff thereafter attempted to elicit Kreiner's opinion on causation by propounding a hypothetical question containing a number of assumptions. The court sustained defense objections to the question, primarily on the ground that it called for speculation by the expert as to plaintiff's state of mind when he left the towmotor. Plaintiff thereupon rested; defendants moved for a nonsuit; and the motion was granted. Plaintiff contends the court erred in granting the nonsuit.[5]

From the analysis which follows, we have concluded that viewing the evidence most strongly in favor of plaintiff, as we must, it may reasonably be inferred that there was a defect in the design of the towmotor and that such defect was a proximate cause of plaintiff's injury.

■ As a preliminary matter, we note that Kreiner's testimony, to the extent it was not objectionable, was to be considered by the judge in ruling upon the motion for nonsuit. Although the expert's testimony was received in lieu of an offer of proof, it was understood that for the purpose of ruling upon a motion for nonsuit, the testimony was to be deemed to have been presented to the jury.

An examination of the record reveals that basically the only evidence excluded was the expert's opinion on the issue of causation. While defense counsel moved to strike the expert's testimony concerning defects in the towmotor, the trial court took the motion under submission but never ruled upon it. In such circumstances, the objections must be deemed to have been waived by defendants' failure to obtain a ruling from the court. (See *Ault* v. *International Harvester Co.,* 13 Cal.3d 113, 123 [117 Cal.Rptr. 812, 528 P.2d 1148]; *People* v. *Benenato,* 77 Cal.App.2d 350, 360-361 [175 P.2d 296] [disapproved on other grounds in *In re Wright,* 65 Cal.2d 650, 654-655 (56 Cal.Rptr. 110, 422 P.2d 998)].) Consequently, the expert's testimony concerning defects in the towmotor must be considered in determining whether plaintiff produced sufficient evidence to overcome the motion for nonsuit.

■ Kreiner's testimony concerning the defects made out a prima facie case on that element of plaintiff's cause of action and defendants

---

[5]Plaintiff also complains of the court's rulings sustaining defendants' objections to questions seeking to elicit the expert's opinion on causation. However, plaintiff has failed to discharge his obligation of preparing an adequate brief on that issue; he fails to argue the issue or to cite any authority showing that the trial judge abused his discretion in excluding the expert's opinion on causation. We, therefore, decline to consider that issue.

do not contend otherwise.[6] Their sole contention is that the nonsuit was properly granted because under the evidence the question whether the claimed defect was a proximate cause of plaintiff's injury was too speculative and conjectural to entitle plaintiff to go to the jury.

Resolution of the issue thus posed requires an appreciation of the quality of facts necessary for an inference and the role inferences are permitted to assume in a prima facie case. "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600.) ▮▮▮ If reason and logic admit an inference to be drawn of the existence of the material facts in issue, the proponent has adduced sufficient evidence to present his case to the jury. (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]; *Garland* v. *Hirsh*, 74 Cal.App.2d 629, 636 [169 P.2d 405]; *Grover* v. *Sharp and Fellows etc. Co.*, 66 Cal.App.2d 736, 742 [153 P.2d 83].)

▮▮▮ Plaintiff's theory of liability requires the factfinder to draw two inferences: (1) that plaintiff was in the towmotor at the time the package of rolled paper began to fall and (2) that he left the safe enclosure of the overhead guard either because of the misleading warning posted on the overhead guard or the exposed position of the propane tank, or both. If those inferences are otherwise proper, it is of no consequence that plaintiff's case requires one inference to be based upon another. If the first inference is proper, a deduction of fact drawn from that inference is likewise proper provided it is not too remote or speculative. (*People* v. *Warner*, 270 Cal.App.2d 900, 908 [76 Cal.Rptr. 160]; *People* v. *Davis*, 235 Cal.App.2d 214, 225 [45 Cal.Rptr. 297]; Witkin, Cal. Evidence (2d ed.) pp. 1052-1054.)

There was sufficient circumstantial evidence from which the jury could reasonably infer that plaintiff bolted the towmotor when he saw the stack of paper falling and was struck as he was trying to flee the machine. Those inferences are supported by the following undisputed facts:

---

[6]A product although faultlessly made may be defective if it is dangerous to place the product in the hands of the user without a suitable warning. (*Dosier* v. *Wilcox-Crittendon Co.*, 45 Cal.App.3d 74, 80-81 [119 Cal.Rptr. 135]; *Grinnell* v. *Charles Pfizer & Co.*, supra, 274 Cal.App.2d 424, 435, fn. 7; *Gherna* v. *Ford Motor Co.*, 246 Cal.App.2d 639, 651 [55 Cal.Rptr. 94]; *Canifax* v. *Hercules Powder Co.*, 237 Cal.App.2d 44, 52-53 [46 Cal.Rptr. 552].) In the case at bench, the expert testified that the posted warning of the capacity of the protective cage was ambiguous and misleading and, therefore, not a suitable warning. In addition, his testimony that the exposed position of the propane tank posed a hazard was sufficient to constitute a prima facie showing of a design defect.

Shortly before the accident Mr. Egeland had instructed plaintiff to secure a certain bond of paper and to transport it to the pressroom; the towmotor was found near where such paper is stored; the towmotor was in neutral gear with the engine still running; plaintiff always turned off the engine when dismounting the towmotor; the column of paper rolls around which the towmotor's clamps were secured was about 15 feet high and was directly underneath a ceiling beam;[7] there was a four or five inch dent in the protective cage which was not present earlier in the evening; plaintiff was found face down four or five feet to the rear of the towmotor with his feet nearest to the machine.

There may be other possible, though hardly probable, explanations why plaintiff was where he was when struck by the stack of paper. As the trial judge observed, he possibly could have been returning from the bathroom. It does not follow, however, that the inference that plaintiff was in the towmotor when the rolls of paper began falling is thereby marred by speculation. ■■■ It is not incumbent upon a plaintiff to show that an inference in his favor is the only one that may be reasonably drawn from the evidence; he need only show that the material fact to be proved may logically and reasonably be inferred from the circumstantial evidence. (*Estate of Rowley*, 257 Cal.App.2d 324, 334-335 [65 Cal.Rptr. 139], and cases cited therein; Witkin, Cal. Evidence (2d ed.) pp. 1050-1051.) ■■■ This burden plaintiff has sustained. The known facts and circumstances most strongly suggest that plaintiff was in the towmotor but abruptly abandoned it when the rolls of paper began falling. The mere fact that other inferences adverse to plaintiff might be drawn does not render the inference favorable to plaintiff too conjectural or speculative for consideration.

The problem of causation is somewhat more complex. It must not only be inferred that plaintiff was in the towmotor as the packages began to fall but it also must be inferred that the inadequate and misleading warning or the exposed position of the propane tank, or both, caused him to leave what was in fact a protected place. Defendants argue that this reasoning process amounts to nothing more than pure conjecture. They maintain that plaintiff was the only one who could have testified to his mental processes and since his retrograde amnesia precluded him from recalling and testifying to the events, the trial court had no alternative but to nonsuit plaintiff. We are unpersuaded.

---

[7]The evidence indicated that the column of packages and the beam were of equivalent height.

Courts have been sensitive to problems faced by consumers or users of defective products in proving defect and proximate cause. As we explained at the outset, the law recognizes that in a products liability case proof of those elements by direct evidence is frequently impossible; a plaintiff may, therefore, satisfy his burden of proving defect and causation by circumstantial evidence. (*Elmore* v. *American Motors Corp., supra,* 70 Cal.2d 578, 583-584; *Vandermark* v. *Ford Motor Co., supra,* 61 Cal.2d 256, 260; *Grinnell* v. *Charles Pfizer & Co., supra,* 274 Cal.App.2d 424, 435, 438; *Johnson* v. *Standard Brands Paint Co., supra,* 274 Cal.App.2d 331, 338; *Gherna* v. *Ford Motor Co.,* 246 Cal.App.2d 639, 650 [55 Cal.Rptr. 94].) In *Grinnell* v. *Charles Pfizer & Co., supra,* 274 Cal.App.2d 424, there was no direct evidence of any virulence in the oral polio vaccine ingested by plaintiff but the reviewing court nevertheless held that defect in the vaccine as well as causation could be inferred from circumstantial evidence.

In the case at bench, plaintiff has gone as far as he can in proving a causal connection between the defects and his injuries. To refuse to permit an inference of causation to be drawn from the showing made would permit defendants to escape liability for a breach of their legal duty simply because, through a fortuitous circumstance, plaintiff is unable to provide direct evidence that the defect was a proximate cause of his injuries. ▮ Whether an inference should be drawn may be properly influenced "by a policy which makes the action favored or disfavored." (Witkin, Cal. Evidence (2d ed.) p. 1051.) "[T]he paramount policy to be promoted by the rule [of strict liability] is the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them." (*Price* v. *Shell Oil Co., supra,* 2 Cal.3d 245, 251 [85 Cal.Rptr. 178, 466 P.2d 722].) To deny to plaintiff the benefit of the inference of proximate cause would frustrate that policy.

In other instances the law has stood ready to come to the aid of a hapless plaintiff who, through no fault of his own, is unable to provide direct evidence that defendant's breach of duty was a proximate cause of his injuries. (*Haft* v. *Lone Palm Hotel,* 3 Cal.3d 756 [91 Cal.Rptr. 745, 478 P.2d 465]; *Summers* v. *Tice,* 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91]; *Ybarra* v. *Spangard,* 25 Cal.2d 486 [154 P.2d 686, 162 A.L.R. 1258].) The solution fashioned in those cases was to shift the burden of proof on the issue of causation to defendant. In *Haft* our high court declared that defendant owner of the swimming pool could not "take refuge in the

position that the burden of proof rests with the probable victim of his statutory violation" (3 Cal.3d at p. 775; fn. omitted) and held that once it was established that the drowning had occurred and that the pool owner had violated his statutory duty to provide lifeguard service, the burden of proof on the issue of causation shifted to the pool owner. Otherwise, the court observed, "the promise of substantial protection held out by our statutory lifeguard requirement will be effectively nullified in a substantial number of cases." (At p. 774.) In so concluding, the court pointed out that its holding was consistent with "the emerging tort policy of assigning liability to a party who is in the best position to distribute losses over a group which should reasonably bear them," citing as an example the products liability case of *Price* v. *Shell Oil Co., supra,* 2 Cal.3d 245. (3 Cal.3d at p. 775, fn. 20.)

 In the instant case we hold, not that the burden of proof shifted, but that the circumstantial evidence adduced by plaintiff was sufficient to entitle him to have the issue of proximate cause submitted to the jury.[8] Where an inference has support in established facts and is a

---

[8]Whether plaintiff was in fact acting upon the "inadequate" warning is an inference about which we can never be certain; on the other hand, we can never be confident that something other than the warning prompted plaintiff to leave the towmotor and thus expose himself to the falling package. Plaintiff proposes that the law supply the presumption that an adequate warning would have been read and heeded. Other courts which have considered the problem of establishing an evidentiary nexus between a warning and a plaintiff's conduct have resolved the dilemma in the manner suggested by the plaintiff. (E.g., *Reyes* v. *Wyeth Laboratories* (5th Cir. 1974) 498 F.2d 1264, 1281, cert. den., 419 U.S. 1096 [42 L.Ed.2d 688, 95 S.Ct. 687] [a rebuttable presumption will arise that the consumer would have read any warning and acted to minimize the risks]; *Nissen Trampoline Co.* v. *Terre Haute First Nat. Bk.* (Ind. 1975) 332 N.E.2d 820, 826-827; see *Technical Chemical Co.* v. *Jacobs* (Tex. 1972) 480 S.W.2d 602, 606. See also, Rest.2d Torts (1965) § 402A, com. j.; Note, Products Liability—Failure to Warn, 53 A.L.R.3d 239, 247.) Other courts have taken the position that an inadequate warning is in legal effect no warning at all and, therefore, proof of causation focuses not upon the link between the warning and plaintiff's injuries, but upon whether the product itself was a substantial factor in plaintiff's injuries. In such jurisdictions, whether plaintiff read the warning and acted pursuant to it becomes irrelevant. (See *Frankel* v. *Lull Engineering Co.* (E.D.Penn. 1971) 334 F.Supp. 913, 925-926, affd. 470 F.2d 995; *Spruill* v. *Boyle-Midway, Inc.* (4th Cir. 1962) 308 F.2d 79, 87; see also, *Kalopodes* v. *Federal Reserve Bank of Richmond* (4th Cir. 1966) 367 F.2d 47, 50 [24 A.L.R.3d 380]; *D'Arienzo* v. *Clairol, Inc.,* 125 N.J.Super. 224 [310 A.2d 106, 110-112]; *Muncy* v. *Magnolia Chemical Co.* (Tex.Civ.App. 1968) 437 S.W.2d 15, 19-20; cf. *Bituminous Casualty Corp.* v. *Black & Decker Mfg. Co.* (Tex.Civ.App. 1974) 518 S.W.2d 868, 875.) We have, however, found no California case on point. In several recent strict liability cases involving a manufacturer's duty to warn, our courts have noted that when an adequate warning is given to the user, the manufacturer may assume it will be read and heeded. (E.g., *Carmichael* v. *Reitz,* 17 Cal.App.3d 958, 990 [95 Cal.Rptr. 381]; *Oakes* v. *E. I. Du Pont de Nemours,* 272 Cal.App.2d 645, 659 [77 Cal.Rptr. 709].) We cite these cases not because they necessarily embrace plaintiff's proposition, but to indicate the reasonableness of the inference that

reasonable deduction or extension of that evidence, it cannot be condemned as speculative. (See *People* v. *Williams,* 5 Cal.3d 211, 217 [95 Cal.Rptr. 530, 485 P.2d 1146].) ██ Once a plaintiff has adduced credible and substantial evidence from which the existence of another fact critical to plaintiff's prima facie case may be inferred, a nonsuit or directed verdict is proper only when the nonexistence of the inferred fact is shown by clear, positive and uncontroverted evidence. (*Leonard* v. *Watsonville Community Hosp.,* 47 Cal.2d 509, 514-515 [305 P.2d 36]; *Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal.2d 64, 70-71 [77 P.2d 1059]; *Casetta* v. *United States Rubber Co.,* 260 Cal.App.2d 792, 814 [67 Cal.Rptr. 645]; *Krause* v. *Apodaca,* 186 Cal.App.2d 413, 419 [9 Cal.Rptr. 10].) ██ Here, plaintiff testified without contradiction that he had read the warning admonishing that the overhead cage accorded no protection from "heavy or capacity loads" and further, that he feared a possible explosion from a falling object striking and rupturing the unshielded propane tank. It is a perfectly logical and reasonable deduction that when confronted with a falling object of substantial weight, plaintiff acted in conformity with his expressed concerns.

We conclude that plaintiff adduced sufficient evidence to overcome a motion for nonsuit. Whether the inference of proximate cause should be drawn should have been left to the jury.

Judgment is reversed.

Morris, J., concurred.

**KAUFMAN, J.**—I concur in the judgment of reversal because I am persuaded that a reasonable inference can be drawn that plaintiff jumped off the towmotor as a result of his previously formed anxiety about the exposed position of the gas tank. Not so, however, as to the so-called "defect" of erroneous warning. Although plaintiff testified he was aware of the warning, there is no testimony that, prior to the accident, he formed the intention of getting off the towmotor if he saw a heavy roll of paper falling. It is unreasonable in my view to infer that plaintiff saw the roll falling, remembered the warning, and decided to get off. If the accident happened as plaintiff hypothesizes, there was no time for deliberate rationalization by plaintiff and it is sheer speculation to suppose otherwise.

when plaintiff was confronted with a situation to which the warning was directed, he acted upon it when he alighted from the towmotor.

Additionally, there is no evidence to prove that the so-called defective warning was defective. There is no proof that the protective cage withstood the direct impact of a heavy falling object. For all anyone knows the dent in the cage could have been caused by a glancing blow from the roll of paper or one part of the roll could have reached the floor or other resistant surface by the time another part came into contact with the cage.

In my view, the trial court was correct in not allowing the so-called defective warning to go to the jury. There was, however, sufficient evidence to permit the other defect, the exposed gas tank, to go to the jury, and the nonsuit should not, therefore, have been granted.