[Civ. No. 24375. Fourth Dist., Div. One. May 27, 1983.]

PROFESSIONAL HOCKEY CORPORATION,
Plaintiff, Cross-defendant and Respondent, v.
WORLD HOCKEY ASSOCIATION,
Defendant, Cross-complainant and Appellant.

## COUNSEL

Wyman, Bautzer, Rothman, Kuchel & Silbert, Stuart A. Benjamin and Terry D. Avchen for Defendant, Cross-complainant and Appellant.

Goebel & Monaghan, Louis E. Goebel and James E. Rubnitz for Plaintiff, Cross-defendant and Respondent.

## OPINION

**STANIFORTH, J.**—Professional Hockey Corporation (PHC) sued World Hockey Association (WHA) for failure to pay certain promissory notes. The trial court directed a verdict in favor of PHC for the sum of $178,170 plus interest at 8 percent. Concurrently WHA brought a cross-action against PHC claiming breach of fiduciary duty and damages. At the conclusion of the cross-complainant's (WHA) case in chief, the trial court granted cross-defendant PHC's motion for nonsuit upon the grounds WHA failed to establish PHC owed any fiduciary duty to WHA and therefore had failed to establish a breach of fiduciary duty. The trial court could not find any damages sustained by WHA, assuming arguendo a breach of duty. Cross-complainant WHA appeals.

We conclude the trial court properly granted the nonsuit. The cross-complainant by its own evidence showed a ratification of the very actions upon which it sought to base its claim of violation of a fiduciary duty.

### FACTS

The facts presented to the jury must be scrutinized carefully in light of this fundamental rule: A " 'nonsuit in a jury case . . . may be granted only when

disregarding conflicting evidence, giving to the [cross-complainant's] evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in [cross-complainant's] favor, it can be said there is no evidence to support a jury verdict in their favor.' " (*Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465, 469 [85 Cal.Rptr. 629, 467 P.2d 229], quoting *Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578, 583 [75 Cal.Rptr. 652, 451 P.2d 84]; see *Dimond* v. *Caterpillar Tractor Co.* (1976) 65 Cal.App.3d 173 [134 Cal.Rptr. 895].)

WHA was a nonprofit corporation organized under the laws of Delaware and operated by a board of trustees. Its purpose was to operate and promote a major professional hockey league in the United States and Canada. One of the functions of the board was to consider and make decisions with respect to franchise transfers. The bylaws require the president conduct an investigation of the potential transfer of a franchise and report the result of his investigation to the board. The sale of any team must be approved by the board of the WHA. Usually the board called a special meeting where the members of the board would attend to decide whether to approve a transfer.

In December 1972, Leonard A. Bloom entered into an agreement to purchase the Los Angeles Sharks (Sharks), a hockey team, from Dennis A. Murphy. Bloom intended to move the franchise to San Diego. The board thereafter held a meeting (Jan. 1973) to discuss approval of this transfer as required by the bylaws. At that time Murphy was on the board representing the Sharks. The trustees voted to deny the application by a vote of 11 to 1. Murphy was the single trustee voting in favor of sale.

Later the transfer to Bloom was approved conditionally. Bloom then transferred the Sharks to his wholly owned corporation PHC. Bloom, as an owner of PHC, was a member of the WHA with the right to designate a member of WHA's board. He appointed Murphy, who was the PHC representative on the board until November 1973. Murphy then became president of the WHA. He served in this capacity until June 1975. Bloom replaced Murphy, becoming the PHC representative on the board in December 1973. Almost immediately after the purchase of the Sharks from Murphy, Bloom began to have financial difficulties and fell into default on his obligation to the WHA. He also discovered he would be unable to relocate the club in San Diego—one of his main motives for purchasing the club.

In December 1973 Bloom, through PHC, sold the Sharks to Metro-Sports Associates (Metro-Sports), a Michigan organization. Murphy and Bloom discussed the sale and the needed approval of the board. Around February 5, 1974, Murphy talked to the various trustees in seriatim telephone calls seeking their approval of the sale from PHC to Metro-Sports. The evidence is uncon-

tradicted; the trustees, each individually, approved the sale when talking to Murphy by telephone. There is no evidence, however, of a *telephone conference* call, where there was a joint or group discussion of the sale. However, all of the trustees did approve the sale to Metro-Sports in June 1974 when the WHA board in formal meeting unanimously ratified the sale and transfer of the Sharks franchise to Metro-Sports.[1] Murphy as president of WHA signed a tripartite agreement between PHC and Metro-Sports putting the board's stamp of approval on the sale. Metro-Sports, after operating the franchise for more than a year, went bankrupt and defaulted on financial obligations to WHA.

## DISCUSSION

### I

WHA asserts the WHA bylaws provide for approval of the transfer by the *board*, yet no such approval was ever obtained, that in fact Murphy and Bloom acting together and out of self-interest and in violation of their duty to the board improperly sought individual trustee approval of the sale. It is contended the board never voted to approve the sale in accordance with Delaware law. WHA contends the requirements of the bylaws were circumvented by the seriatim telephone conversations between Murphy and the various members of the board; a breach of fiduciary duties owed by Murphy and Bloom to WHA occurred at that time by those acts. WHA argues the trial court erred in granting the motion for nonsuit because PHC, Murphy and Bloom in violating the bylaws and Delaware corporation law breached their fiduciary duty to WHA.

Without question WHA was a Delaware corporation and Delaware law was applicable to many aspects of WHA's corporate life. (Corp. Code, § 2116; *Pratt* v. *Robert S. Odell & Co.* (1944) 49 Cal.App.2d 550 [146 P.2d 504].) Furthermore, Delaware law adopts, as has California, the concept of the directors and/or trustees fiduciary duty (*Guth* v. *Loft, Inc.* (1939) 23 Del.Ch. 255 [5 A.2d 503]), including the duties of obedience, diligence and loyalty. Directors owe such duty in the management of corporate affairs. In performance of their official duties directors are under obligations of trust and confidence to the corporation and its stockholders. Directors must act in good faith for the interests of the corporation or its stockholders with due care and diligence and within the bounds of their authority. It is the duty of the director to see that a corporation keeps within its corporate powers and obeys the laws. (19 Am.Jur.2d Corporations, § 1271, p. 677.) Under both California and Delaware law the duty of loyalty requires the directors/trustees not to act in their own self-interest when the interest of their corporation will be damaged thereby.

---

[1] The minutes reflect "Upon motion by Mr. Hunter, seconded by Mr. Kaiser, and unanimous vote, it is resolved that the resolution affecting Indianapolis, Baltimore, Detroit [formerly Los Angeles] and Minnesota, as conducted and properly and consistent with the Bylaws by telephone, be ratified in all respects."

In face of these long-standing generally accepted rules PHC makes this intriguing assertion. No fiduciary duty exists between the PHC trustee member of the board and WHA because of the WHA bylaws which provide: "Trustee means the person designated by each Owner to represent his Franchise on the League's Board of Trustees, as established by its Certificate and by-laws." PHC contends the designation of "trustee" does not, alone, trigger fiduciary responsibilities. The argument continues: The various members of the board of trustees of WHA are representatives of the various teams; as professional athletic teams they are by their very nature inherently involved in fierce competition. It is argued, for example, San Diego Charger owner Gene Klein owes no duty of obedience, diligence and loyalty to Los Angeles Raider owner Al Davis.

This may be true on the playing field or in player drafting activities but when the representatives of the various teams sit as the board of trustees of the WHA it is not their club, their bylaws, their personal concept of duty which control their obligations and duties as trustees. The law requires, irrespective of the competitive personal feelings the various owners of teams may have towards each other, when they or their representatives sit on the board of directors of WHA to the extent they have common corporate goals, they have a duty to make decisions for the benefit of the corporation, the hockey league as a whole.

The bylaws provide for board approval of a new team owner. This requirement rests upon the unspoken premise the league as a whole will suffer if one team is financially weak, unable to meet its obligations. The league's good will, credibility and financial strength are involved. Thus each representative on the board owes the league as a whole the traditional fiduciary duties in this commonly shared corporate purpose. Whether Delaware or California law applies, if there is a breach of such fiduciary duty by these members of the board of trustees consequent damages and legal responsibility ensue. (*Bovay* v. *H. M. Byllesby & Co.* (1944) 27 Del.Ch. 381 [38 A.2d 808, 174 A.L.R. 1201]; 2 Fletcher, Cyclopedia Corporations, Directors, Other Officers and Agents, § 511.)

To be specific there is a duty of loyalty which requires directors-trustees not to act in their own self-interest when the interests of the corporation will be damaged thereby. This duty of undivided loyalty applies even though the members of the board may also serve on subsidiary bodies or groups which make up the constituent element of the corporation. For example in *Ravens Cove Townhomes, Inc.* v. *Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 799 [171 Cal.Rptr. 334], a developer and his agents and employees also served as directors of homeowners associations. The appeal court found the duty of undivided loyalty was owed and such directors may not make decisions for

the association that benefit their own interests at the expense of the association and its members. These provisions of the law apply not only to ordinary business corporations, but to nonprofit corporations as well. (*Ibid.*)

I

 We assume a fiduciary duty was owed by Bloom as well as Murphy, yet the question still remains whether the evidence, viewed in the light most favorable to WHA, shows any breach of that fiduciary duty. WHA's argument for breach of fiduciary duty is wound up in this legal ball of yarn.

Section 141, subdivision (i) of the Delaware General Corporations Code provides as follows: "*Unless otherwise restricted by the certificate of incorporation or by-laws,* members of the board of directors of any corporation, or any committee designated by the board, may participate in a meeting of such board, or committee by means of *conference telephone* or similar communications equipment *by means of which all persons participating in the meeting can hear each other,* and participation in a meeting pursuant to this subsection shall constitute presence in person at the meeting." (Italics added.)

In contrast the bylaws of WHA provide: "Any action permitted by these by-laws may be effected by the appropriate vote of the Trustees *obtained via* telegraph, *telephone* or telelex communication, unless a majority of Members file objections, in writing to either matter on which, or the method by which, the vote will be taken." (5.78.)

WHA counsel quickly points out the distinction between the bylaws and the language of the Delaware corporation law (similar to that of California corporation law) which allows "conference telephone" calls "*unless otherwise restricted by the bylaws.*" In contrast the bylaws authorize "telephone communication" as a means of securing appropriate votes of the trustees unless a majority of the trustees file objections.

The policy underlying the Delaware requirement is that all trustees or board members should be able to hear and see each other and be able to exchange views before voting. The Delaware rule rests upon the premise that the board of directors should act as a board and speak as a board, and board decisions should be made only after conscientious, joint consideration of every proposition before them. (*Campbell* v. *Loew's, Incorporated* (Del. 1957) 36 Del.Ch. 563 [134 A.2d 852].)

We assume arguendo that the particular mode of securing the trustee approval of the Sharks' transfer violated section 141, subdivision (i) of the Delaware Corporations Code and that the WHA bylaw insofar as it conflicts

with the Delaware statute, is void, yet the WHA points to no case or authority or any evidence which would indicate the particular method of securing the unanimous vote of the board of trustees approving this transfer of franchise has any causal relationship to the damages here claimed. Assuming there was a breach of duty of a trustee to secure consent in the statutory approval fashion, no damage is shown.[2]

## II

To this barrier of *damnum absque injuria* must be added these further significant facts. The WHA president testified, and the corporate minutes confirmed, the assembled WHA board by unanimous consent expressly ratified the telephonic approval of the transfer to Metro-Sports. Based upon this evidence, introduced as part of the cross-complainant's case-in-chief, the trial court concluded the complained-of act had been in fact ratified. Upon this basis the trial court granted the nonsuit.

There is no dispute as to the fact of ratification. This being true, it is difficult to conceive how a breach of fiduciary duty may exist in face of the ratification, an approval in the precise manner required by Delaware law. But WHA is not deterred by this reasoning. It avers the defense of ratification was not pleaded, therefore not in issue, ergo, the trial court erred in basing its judgment of nonsuit on such premise.

At trial WHA gratuitously submitted both oral testimony and documentary evidence to prove ratification. Thus WHA of its own accord placed the matter before the jury. Such facts preclude WHA's claim on appeal that the issue was improperly raised or litigated. It was said in *Fischer* v. *Ostby* (1954) 127 Cal.App.2d 528, 530 [274 P.2d 221]: "Where the parties voluntarily litigate an issue before the trial court they are estopped from raising the objection on appeal that the issue was not tendered by the pleadings." (See also *Vesci* v. *Ingrim* (1961) 190 Cal.App.2d 419, 424 [11 Cal.Rptr. 830].) As was said in the case of *McAllister* v. *Union Indemnity Co.* (1935) 2 Cal.2d 457, 460 [42 P.2d 305]: "It is also true that the parties may voluntarily submit and try an issue without any specific pleadings and thus be estopped from complaining thereat after judgment."

---

[2]Before granting motion for nonsuit the trial court examined the question of damages claimed by WHA. There was no evidence to establish WHA was obligated to cure any financial deficiencies that followed the Metro-Sports default. Further WHA had never submitted any evidence PHC was liable to WHA for the default created by Metro. The court said "I don't find that WHA, at least on the case in chief presented by the plaintiff, ever triggered any obligation under the conditions that they imposed concerning the sale or transfer. There is no 14-day notice, and there is no 30-day notice."

The cases cited by WHA admitting evidence as to a defense which is not pleaded have no application here. (See *Mayer* v. *Beondo* (1948) 83 Cal.App.2d 665, 668 [189 P.2d 327] and *Holzer* v. *Read* (1932) 216 Cal. 119, 124 [13 P.2d 697].) The cross-complainant by its own acts and as part of its case in chief introduced evidence which completely negated, destroyed its claim of violation of fiduciary duty. Where a party by its voluntary act has introduced evidence which proves its case in chief is without merit, it cannot complain a nonsuit should inevitably follow.　■　It has long been the law when a case is tried on the merits and the issues are thoroughly explored during the course of the trial and the theory of the trial is well known to the court and counsel, the fact the issues were not pleaded does not preclude adjudication of such litigated issues and a review of such issues on appeal. (*Duncan* v. *Sunset Agricultural Minerals* (1969) 273 Cal.App.2d 489, 494 [78 Cal.Rptr. 339]; *Frank Pisano & Associates* v. *Taggart* (1972) 29 Cal.App.3d 1, 16 [105 Cal.Rptr. 414].)

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.