Filed 6/22/22  Alvarez v. Woolrich CA4/1
### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| HILDA YOLANDA ALVAREZ, | D079168 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 21FDV01490S) |
| THOMAS WOOLRICH, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Tim Nader, Judge.  Affirmed.

Law Office of Elliott Kanter and Elliott Kanter for Defendant and Appellant.

No appearance for Plaintiff and Respondent.


Hilda Yolanda Alvarez filed three successive requests for a domestic violence restraining order (DVRO) against her ex-boyfriend, Thomas Woolrich.  After her first two requests were denied, the trial court granted her third request and issued a five-year restraining order.  Woolrich appeals, claiming the third DVRO request rested on largely the same conduct rejected

in her prior requests and was therefore barred by res judicata. Even if not barred, he asserts the only *new* evidence on which the court could base its discretionary decision was inadmissible as speculative and hearsay, such that issuing the DVRO was an abuse of discretion. Rejecting both contentions, we affirm. Orders denying two prior DVRO requests without prejudice did not preclude a later ruling granting the third DVRO request predicated on new evidence. Nor was there an abuse of discretion in granting a DVRO where ample evidence, apart from the testimony that Woolrich now challenges for the first time on appeal, supports the court's finding of abuse.

FACTUAL AND PROCEDURAL BACKGROUND

Alvarez filed her first DVRO request in October 2020. She stated in her supporting declaration that Woolrich had been slapping her face and spanking her "with a strong, heavy hand," to get her to obey. She described Woolrich as "heartless," lacking in compassion, and as "a dangerous, bad person" who had "committed many abuses," including manipulating, pressuring, and assaulting her. She mentioned a day when Woolrich called her over 20 times on the phone, causing her to trip and burn herself with hot tea. He entered her apartment three times without permission and stole her cash and personal property. Woolrich would not return the key to her car, and Alvarez was worried he would do something to it.

The parties appeared before Judge Enrique Camarena on October 29. Alvarez testified that everything in her declaration was true and had nothing to add. Woolrich denied stealing from Alvarez, calling her repeatedly, or spanking her. He also denied ever showing up at her house. Based on this proffer, the court denied Alvarez's motion. Noting that Alvarez bore the burden to prove that "abuse" occurred within the meaning of the Domestic

2

Violence Prevention Act (DVPA, Fam. Code,[1] § 6200 et seq.), Judge Camarena indicated she did not meet that burden where there was no corroborating evidence to support her allegations. Advising Alvarez to bring an additional witness if she sought a restraining order "in the future," the court denied her request "without Prejudice."

Alvarez filed a second DVRO request in December 2020. As before, she declared that Alvarez stole from her, kept a key to her car, and called her repeatedly, causing her to spill hot tea on her arm. Over the last year, she found her car doors unlocked or open and noticed the carpet in her trunk jostled. She suspected Woolrich was "doing this to harass and scare [her]" and feared he would "put something illegal in [her] car." Alvarez claimed Woolrich slapped her on "various occasions," most recently in April or May 2020. She described finding him once inside her apartment "with lamps in his hand, [and] a mess around the room and living room." She claimed he had put worms in all the food in the kitchen, requiring her to throw it all away. Alvarez attached a copy of a September 2020 police incident report, in which she told police that Woolrich had slapped her in the face five times in May, but admitted she did not call police when the incident happened.

The parties appeared before Judge Maryann D'Addezio on January 7, 2021. The court asked Alvarez to specify what happened in the slapping incident, but Alvarez could only say that it happened after Woolrich felt she was not obeying him. Alvarez clarified that she did not answer the many calls she received from private numbers but *suspected* they were from Woolrich. She further testified about finding Woolrich in her home without

---

[1]    Further statutory references are to the Family Code unless otherwise indicated.

permission three times.  Asked to respond, Woolrich denied hitting her or stealing from her.

Based on this proffer, the court denied Alvarez's second DVRO request, finding she had again failed to meet her burden to show that "abuse" occurred within the meaning of the DVPA.  Judge D'Addezio did not find Alvarez credible and noted she had made "the exact same allegations" in her prior request, which was also denied.  As before, the court denied Alvarez's request for a DVRO "without Prejudice."

In March 2021, Alvarez filed a third request for a DVRO.  This time, her attached declaration added several additional details to her prior allegations.  During their dating relationship, she said Woolrich slapped her several times, including when she did not do what he said.  After they ended their relationship, she noticed that a bag of her important documents and valuables was missing from her home.  Woolrich told her not to report it, saying it had to be somewhere in her home.  Afterwards, Alvarez came home one day to find Woolrich holding a flashlight and looking through her belongings.  He seemed surprised to see her and left; Alvarez later found her missing bag in its proper place but noticed some jewelry had been taken. Alvarez explained she had also found Woolrich in her home other times without permission.  Around September 2020, she found him sitting in her home with his legs crossed, wearing her underwear.  Woolrich acted as though it was funny; once he saw that Alvarez felt differently, he left.  On another occasion, she noticed that several water bottles in her home had broken seals, and food was covered in worms.  Fearful he had put something in her food, she threw everything out.

Alvarez also explained the May 2020 slapping incident.  She declared that Woolrich came to her home after the breakup and told her she "could not

4

get rid of him" and "had to obey him." When Alvarez rejected Woolrich's advances, he slapped her. She pushed him and asked him to leave; Woolrich "did not leave easily." She again attached the September 2020 police report documenting her statement to police that Woolrich had slapped her in May.

Alvarez also explained *why* she believed Woolrich was tampering with her car. Although she always locked her doors, there were "several times that [she would] find [her] car unlocked with the car doors wide open." Woolrich was the only person with a spare key, and he refused to give it back. She found her doors unlocked when leaving work on December 11, 2020, and suspected Woolrich did it. In the second week of January 2021, she noticed the air in her tires were low. At the shop, she was told "someone had released air from all of my tires." She attached an itemized receipt from Discount Tire that is cut off but appears to list "FREE FLAT REPAIR" for all four tires.

Finally, Alvarez asserted for the first time that Woolrich's behavior had caused her to suffer post-traumatic stress. She submitted letters from a clinic signed by a social worker confirming her diagnosis and treatment plan.

Woolrich responded with a supporting declaration again denying that he had ever hit Alvarez, entered her apartment, stolen from her, or gone near her car. As to the specific allegations about deflating car tires, leaving her car doors unlocked or open, entering her apartment and wearing her underwear, taking her valuables, putting worms in her food, and slapping her, Woolrich offered categorical denials. He denied having a copy of her car keys or any of her belongings. He further denied even seeing Alvarez after they ended their relationship in April 2020, making her claims from later that year impossible. Noting the court had denied her two prior DVRO

5

requests, Woolrich suggested she was manufacturing allegations because he refused to marry her, sell his house, and move with her to Arizona.

Alvarez filed a supplemental declaration describing two incidents in which Woolrich had broken into her home. The time she found him sitting in her undergarments, he asked her to take pictures of him. When she refused, he allegedly became "irate" and eventually left. On another instance, Alvarez "walked in on him snooping around [her] home with gloves." She also described coercive sexual behavior during their relationship that made her feel uncomfortable and described Woolrich as "an abusive man that does not take no for an answer."

The parties appeared before Judge Nader on April 22. Woolrich denied hitting or demanding money from Alvarez and noted that two judges had already dismissed her allegations. Alvarez offered to present her daughter as a witness, but the court indicated it would be cumulative of her declarations. Based on her declarations and the parties' testimonies, it found that Alvarez established by a preponderance of the evidence that acts of abuse under the DVPA had occurred and entered a five-year restraining order.

## DISCUSSION

The DVPA permits a trial court to issue a restraining order separating parties to prevent a recurrence of domestic violence based on a declaration or testimony demonstrating "reasonable proof of a past act or acts of abuse." (§ 6300.) "Abuse is not limited to the actual infliction of physical injury or assault" (§ 6203, subd. (b)), but rather includes acts such as molesting, striking, stalking, harassing, constantly calling, and disturbing the peace of the other party. (§§ 6203, subd. (a)(4), 6320, subd. (a).) In other words, abuse includes "acts that 'destroy[ ] the mental or emotional calm of the other party.' " (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820.)

6

To obtain a DVRO, a petitioner must establish past abuse before the trial court by a preponderance of the evidence. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.) On appeal, we review an order granting a DVRO request for abuse of discretion. (*Ibid.*) That standard in turn requires reviewing the trial court's factual findings for substantial evidence, its conclusions of law de novo, and its application of the law to the facts for abuse of discretion. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711−712.)

Woolrich's main contention is that the court was barred under res judicata where two prior DVRO requests alleging the same general conduct had been denied. "Whether the doctrine of res judicata applies in a particular case is a question of law which we review de novo." (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228.) Res judicata, or claim preclusion, " 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' " It applies "if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) Relatedly, collateral estoppel applies to prevent "relitigation of previously decided issues" and is found "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at pp. 824–825.) Both concepts require a final adjudication on the merits. Here, as we explain, the two prior DVRO requests were denied *without prejudice* and did not bar Aguilar from refiling her request with additional evidentiary support.

7

Although Judge Camarena and Judge D'Addezio concluded on their records that Alvarez had not met her moving burden, they denied her request for a DVRO without prejudice. "Dismissals of actions without prejudice ordinarily indicate that such judgments of dismissal affect no right or remedy of the parties and that there has been no decision of the case upon the merits. [Citation.] The only adjudication by a judgment of dismissal 'without prejudice' is that nothing is adjudged and that the parties are as free to litigate the issue as though the action had not been commenced." (*Fleishbein v. Western Auto Supply Agency* (1937) 19 Cal.App.2d 424, 427; see *Wilkins v. Wilkins* (1950) 95 Cal.App.2d 611, 613 ["The term 'without prejudice,' in its general adaptation, means that there is no decision of the controversy on its merits, and leaves the whole subject in litigation as much open to another application as if no suit had ever been brought."].) Having denied the two prior requests without prejudice, Alvarez was not barred from requesting a DVRO for a third time based on new evidence.[2]

In her third DVRO request, Alvarez added several details that were missing from her two prior requests. For the first time, she explained their relational power dynamics and Woolrich's coercive sexual behavior, offered a fuller account of three different times after their breakup that Woolrich

---

[2] Woolrich does not suggest it was an abuse of discretion for the trial court to deny Alvarez's second DVRO request without prejudice, and we therefore have no occasion to decide where that line must be drawn. (See, e.g., *Varanelli v. Luddy* (1943) 130 Conn. 74, 80–81 [32 A.2d 61, 64–65] [a court can deny a motion without prejudice, avoiding preclusive effect, "only where there is some reasonable ground upon which [it] can conclude that the issues should not be finally decided upon the situation as it stands"].) Instead, Woolrich merely suggests that because the first and second requests were denied, the trial court was likewise required to deny the third. That argument fails because the first and second dismissals were without prejudice.

entered her home while she was away (including his reactions on being found), detailed what led to Woolrich slapping her in May 2020, and related why (given her habit of locking her car doors and Woolrich being the only one with a spare key) she believed Woolrich was the one leaving her doors open or unlocked. Alvarez added a new allegation that she thought Woolrich let the air out of her tires in January 2021, attaching a receipt from Discount Tire showing "FREE FLAT REPAIR" for all four tires. Finally, she offered new evidence of her mental health diagnosis, supported by accompanying documentation from a clinic. In contrast to her first two DVRO petitions, which alleged abuse in the abstract, Alvarez's third petition was more granular, adding details as to matters previously alleged as well as asserting new facts for the first time. It is simply not the case that Alvarez filed an identical DVRO request for a third time, hoping for a different outcome. (See, e.g., *Rynsburger v. Dairymen's Fertilizer Co-op, Inc.* (1968) 266 Cal.App.2d 269, 278 [res judicata is not avoided " 'by minor differences of form, parties, or allegations . . . contrived only to obscure the real purpose—a second trial on the same cause between the same parties' "].)

Next, Woolrich argues that it was an abuse of discretion to grant the DVRO request based on "clearly inadmissible evidence." He challenges the following testimony in Alvarez's declaration: "On the second week of January 2021, I noticed that my car tires were low. I took my car to auto service and they told me someone had released air from all of my tires." Although he raised no evidentiary objections below, Woolrich maintains the challenged testimony furnished the *sole* basis for the court's decision where other

9

allegations merely repeated previously rejected claims.[3]  In his view, Alvarez's conclusion that someone had let the air out of her tires was speculative and based on the hearsay statement of an unidentified mechanic. By nonetheless issuing a restraining order based on this evidence, he believes the court exceeded the bounds of reason.

At the outset, Woolrich forfeited this contention by failing to object. (Evid. Code, § 353; see *In re C.B.* (2010) 190 Cal.App.4th 102, 132–133; *In re Marriage of Davila & Mejia, supra,* 29 Cal.App.5th at p. 227.)  But even if we considered his claim, it rests on a faulty premise.  Having concluded res judicata posed no bar to evaluating Alvarez's third DVRO request, there was ample evidence on which the court could find that Alvarez demonstrated abuse *apart from* the challenged testimony.  (See, e.g., *In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 [inquiry is whether there is *some* evidence that, if believed, would support the finding].)  For example, the court could reasonably credit evidence that Woolrich entered her apartment multiple times, stole a bag containing her valuables, and periodically opened her car doors.[4]  On this record, any contention that evidentiary error led to an abuse of discretion in granting the DVRO necessarily fails.

---

[3]  We read the record differently: details regarding Woolrich's coercive behavior during their dating relationship and Alvarez's mental health diagnosis were also first mentioned in the third DVRO request.

[4]  Indeed, with Alvarez submitting a receipt showing she had to repair *four* flat tires at the same time, the court could reasonably (and not speculatively) infer precisely what the unidentified mechanic purportedly said:  that someone had intentionally let the air out of her tires.  (See *Dimond v. Caterpillar Tractor Co.* (1976) 65 Cal.App.3d 173, 184–185 ["Where an inference has support in established facts and is a reasonable deduction or extension of that evidence, it cannot be condemned as speculative."].)

## DISPOSITION

The order is affirmed.  The parties shall bear their own costs on appeal.

DATO, J.

WE CONCUR:

IRION, Acting P. J.

DO, J.