Filed 5/19/15  Sumaya v. Cequent Performance Products CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| EMILY SUMAYA, a Minor, etc., | D066880 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1106382) |
| CEQUENT PERFORMANCE PRODUCTS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, Matthew C. Perantoni, Judge.  Affirmed.

The Homampour Law Firm, Arash Homampour and Wendi O. Wagner for Plaintiff and Appellant.

Hewitt Wolensky & McNulty, Elizabeth V. McNulty and Jamison E. Power for Defendant and Respondent.

Plaintiff Emily Sumaya (Sumaya), by and through her guardian ad litem, Eh Sumaya, appeals from the trial court's summary judgment in favor of defendant Cequent

Performance Products, Inc. (Cequent) in Sumaya's lawsuit alleging strict product liability and negligence against Cequent. We conclude that summary judgment was properly granted in favor of Cequent because Sumaya is not able to establish the necessary element of causation for either of her causes of action. Accordingly, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

The basic facts that gave rise to this case are undisputed. On the night of March 20, 2010, five-year-old Sumaya was a backseat passenger in a Subaru Forester driven by her uncle, Ning Yang. As Yang drove in the number three lane of Interstate 10 in Riverside County, a seven-pound metal draw bar, which is part of a tow hitch assembly, crashed through the front windshield of the Subaru, hitting Sumaya in the head and severely injuring her. Immediately prior to the incident, Yang saw a large truck in front of him in the number four lane, with sparks coming from underneath it, but he saw no debris on the freeway and did not notice any disabled or abandoned vehicles or trailers. Neither Yang, nor any other witness, saw the draw bar before it struck the Subaru or knew how it ended up on the freeway.

The draw bar that injured Sumaya was manufactured by Cequent and is used to connect a tow vehicle to a trailer. As designed, the draw bar is attached to the tow vehicle by inserting the draw bar into the tube-shaped receiver hitch installed on the tow vehicle. To prevent the draw bar from disengaging from the receiver hitch, a metal pin is

2

inserted through holes that line up on the receiver hitch and the draw bar, and a clip is placed on the pin.

Sumaya filed a lawsuit against Cequent alleging two causes of action: strict product liability and negligence. Sumaya alleges that the draw bar ended up on the freeway because of a design defect in the tow hitch assembly or because Cequent failed to warn consumers to prevent such an incident. Specifically, Sumaya contends that the draw bar was designed so that, when not being used to tow a trailer, it could be inserted into the receiver hitch on the tow vehicle *without* employing the pin and clip. According to Sumaya, if the pin and clip are not employed, the draw bar initially remains attached to the receiver hitch, but the vibrations caused by driving could eventually cause the draw bar to come detached from the receiver hitch and end up on the roadway. Sumaya contends that Cequent should have warned consumers not to use the draw bar without the pin and clip or should have implemented a design feature that would have prevented the draw bar from detaching from the tow vehicle when used without a pin and clip and when not towing a trailer.[1]

After conducting discovery, Cequent filed a motion for summary judgment, in which it argued that Sumaya could not establish the necessary element of causation for

---

[1]  Sumaya's complaint and discovery responses also set forth the theory that the tow hitch assembly was defective because it was designed in a way that it could fail *while towing a trailer*, resulting in the draw bar being deposited on the roadway. Sumaya has clarified that her current theory of the case is that the tow hitch assembly is defective because the draw bar can detach when inserted in a hitch receiver without the use of a pin and clip when *no trailer* is being towed and that Cequent failed to warn of that problem or design around it.

either of her causes of action because there was no evidence of how the draw bar ended up on the freeway and thus no evidence that any product defect caused Sumaya's injuries. To meet its initial burden on summary judgment, Cequent submitted, among other things, discovery responses from Sumaya in which she admitted that she did not know how the draw bar came to be located on the freeway.

In opposition to the motion for summary judgment, Sumaya relied, among other things, on the declaration of her expert witness, mechanical engineer James William Jones. As Jones opined, the "the only rational explanation" of how the draw bar ended up on the freeway was that it vibrated out of a receiver hitch while being driven on the freeway, but not being used to tow a trailer, because the pin and clip were either missing or improperly inserted. Jones also opined that other theories of how the draw bar came to be located on the freeway were not "scientifically probable." Specifically, Jones rejected the theory that the draw bar could have (1) "fallen out of the back of a pick-up truck"; (2) "fallen out of the back of a moving van"; (3) "fallen out of a dump truck"; (4) "been discarded intentionally by a reckless motorist"; or (5) "been a remnant of a prior accident lying on the side of the road that got kicked up onto the freeway." (Underscoring omitted.) Cequent filed evidentiary objections to portions of Jones's declaration.

The trial court granted Cequent's motion for summary judgment. It also sustained Cequent's evidentiary objections to the portions of Jones's declaration in which he opined that (1) the only rational explanation for the draw bar ending up on the freeway was that it vibrated out of the receiver hitch because the pin and clip were

4

missing or improperly inserted; and (2) other theories of how the draw bar came to be located on the freeway were not scientifically probable.

Sumaya appeals from the judgment, arguing that the trial court improperly granted summary judgment in favor of Cequent and improperly sustained Cequent's objections to Jones's declaration.

II

DISCUSSION

A.    *The Trial Court Properly Sustained Cequent's Evidentiary Objections*

As an initial matter, we consider Sumaya's challenge to the trial court's ruling sustaining Cequent's objections to portions of Jones's declaration.

It is well established that " 'proof of causation cannot be based on . . . an expert's opinion based on inferences, speculation and conjecture.' " (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 777 (*Saelzler*).)  Based on this principle, Cequent sought to exclude Jones's opinion that the draw bar ended up on the freeway because it vibrated out of a receiver hitch without the pin and clip being engaged, instead of other possible causes, including falling off of a pickup truck, dump truck or moving van, being intentionally discarded by a motorist, or ending up on the freeway as the remnant of an earlier accident.

We apply an abuse of discretion standard of review when deciding whether the trial court properly sustained Cequent's objections.  Although the California Supreme Court recently expressly declined to reach the issue in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535, the weight of authority, both before and after *Reid*, holds that an

5

appellate court applies an abuse of discretion standard when reviewing a trial court's rulings on evidentiary objections made in connection with a summary judgment motion. (See, e.g., *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852; *Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 143-144; *Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 82-83; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)[2]

According to Evidence Code section 801, subdivision (b), expert testimony may be excluded if it is not "[b]ased on matter . . . perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ." (*Ibid*.) As our Supreme Court has explained, "under Evidence Code section 801, the trial court acts as a gatekeeper to exclude speculative or irrelevant expert opinion. . . . '[T]he expert's opinion may not be based "on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors. . . . [¶] Exclusion of expert opinions that rest on guess, surmise or conjecture [citation] is an inherent corollary to the foundational predicate for admission of the expert testimony: will the testimony assist the trier of fact to evaluate the issues it

---

2       Even were we to apply a de novo standard of review to the trial court's evidentiary ruling, we would still conclude that the trial court properly sustained the objections. (See *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114 [explaining that under any standard of review it would reach the same conclusion regarding the trial court's ruling on evidentiary objections made in connection with a summary judgment motion].)

must decide?" ' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770 (*Sargon*).) "[A]n expert's opinion that something *could* be true if certain assumed facts are true, without any foundation for concluding those assumed facts exist in the case before the jury, does not provide assistance to the jury . . . ." (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117.)

Here, the trial court was well within its discretion to determine that Jones's opinion about how the draw bar came to be located on the freeway was based on " ' "assumptions of fact without evidentiary support . . . , or on speculative or conjectural factors." ' " (*Sargon*, *supra*, 55 Cal.4th at p. 770.)

First, with respect to Jones's conclusion that the draw bar could not have fallen off of a pickup truck or a moving van, those conclusions are speculative and based on conjecture and are not within any area of expertise claimed by Jones. Jones asserts that pickup trucks and moving vans are not normally driven with their tailgates or doors open, and that the draw bar could not have fallen out of a closed truck. However, in his declaration Jones identified no background that would make him an expert on the way in which trucks are driven. Further, Jones cites no reason for concluding that this was not one of the instances in which a truck was driven with its doors or tailgate open, in which a flatbed pickup truck was used, or one in which the draw bar was inadvertently left on an unenclosed area of a truck, such as a bumper or roof. In those instances, the heavy draw bar would not have to "bounce out" as Jones describes.

Jones's opinion that the draw bar could not have fallen out of a dump truck is also too speculative and conjectural to be admissible. Jones bases his opinion on the

7

purported fact that "dump trucks are made in such a way that items do not just 'fall' out unless they are very, very light." However, Jones cites no factual basis for this assumption or any expertise in the design of dump trucks or the instances in which dump trucks might be incorrectly loaded to allow even heavy items to fall off.

Next, Jones also engages in pure speculation and conjecture when concluding that the draw bar could not have been left on the freeway as the remnant of an earlier accident. Jones did not review records of previous accidents, and he bases his opinion solely on the fact that witnesses observed no *other* debris on the freeway. However, Jones provides no factual basis for the assumption that accident debris, other than the draw bar, would still have been on the freeway after an accident that could have occurred a substantial amount of time earlier, and he provides no basis for his assumption that the witnesses to the accident or the responding officers conducted an adequate search for any other debris on the freeway on the night of the accident.

Jones also cites no sound factual basis for his assumption that the draw bar could not have been intentionally thrown onto the freeway. As Jones explained, his conclusion is based on the assumption that no one would commit such an act because it would presuppose an intent to cause random injury or damage. However, Jones has no basis for reaching the conclusion that no one could possibly commit a willfully malicious act, and he has no expertise that would allow him to opine on human behavior. Further, Jones assumes that someone could not have discarded the drawbar on the freeway because there were no eyewitnesses to such an act, but he cites no reason to believe that such an act

8

would have an eyewitness or that any eyewitness would have been located if such an incident had occurred.

Finally, the trial court properly sustained the objection to Jones's statement that "the only rational explanation" for the draw bar being located on the freeway was that it vibrated loose and fell onto the freeway because it was inserted in a hitch receiver but the pin and clip were missing or were improperly engaged. Although Jones cites no specific factual basis for his conclusion, we infer that he reached his conclusion by the process of elimination, namely by rejecting the other possible ways that the draw bar could have ended up on the freeway. However, as we have explained, Jones provides no sound basis for eliminating the other theories of how the draw bar ended up on the freeway, and thus he also fails to provide a sound factual basis for reasoning by the process of elimination.

In sum, we conclude that the trial court properly sustained Cequent's objections to Jones's declaration on the basis that Jones's opinions as to how the draw bar ended up on the freeway were speculative and based on conjecture.

B. *Summary Judgment Was Properly Granted in Favor of Cequent*

1. *Standard of Review*

Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is to be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant "moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) A defendant may meet this burden either by

9

showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense. (*Ibid.*) "[T]he defendant may show through factually devoid discovery responses that the plaintiff does not possess and cannot reasonably obtain needed evidence." (*Collin v. CalPortland Company* (2014) 228 Cal.App.4th 582, 587.)

If the defendant's prima facie case is met, the burden shifts to the plaintiff to show the existence of a triable issue of material fact with respect to that cause of action or defense. (*Aguilar*, *supra*, 25 Cal.4th at p. 849; *Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261.) Ultimately, the moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar*, at p. 850.)

We review a summary judgment ruling de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.) " 'Since defendant[] obtained summary judgment in [its] favor, "we review the record de novo to determine whether [it has] conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." ' " (*Saelzler*, *supra*, 25 Cal.4th at p. 767.) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Lenane v. Continental Maritime of San Diego, Inc.* (1998) 61 Cal.App.4th 1073, 1079.) "[W]e are not bound by the trial court's stated reasons for its ruling on the motion; we

10

review only the trial court's ruling and not its rationale." (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1402.)

2.     *Legal Standards for Causation*

To prevail on either of her causes of action at trial, Sumaya was required to establish the element of legal causation.  "[U]nder either a negligence or a strict liability theory of products liability, to recover from a manufacturer, a plaintiff must prove that a defect caused injury." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 479.)  "Liability must be predicated upon a showing that a defect in the product was a proximate cause of plaintiff's injury." (*Thomas v. Lusk* (1994) 27 Cal.App.4th 1709, 1716, fn. 3.)

Case law explains the type of causation that must be established in a product liability action and to establish negligence.  "A manufacturer is liable only when a defect in its product was a legal cause of injury. [Citation.]  A tort is a legal cause of injury only when it is a substantial factor in producing the injury." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)

Consistent with this principle, in any type of tort action a plaintiff establishes causation only if it can show that it is *more likely than not* that the alleged tortious conduct caused the injury.  Specifically, to establish causation in fact, " '[t]he plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is *more likely than not* that the conduct of the defendant was a cause in fact of the result.  A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes

11

the duty of the court to direct a verdict for the defendant.' " (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205-1206, italics added (*Ortega*).)

Because the plaintiff must establish that it is more likely than not that the alleged tortious conduct caused the injuries, "[a] plaintiff cannot recover damages based upon *speculation* or even a *mere possibility* that the wrongful conduct of the defendant caused the harm." (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 133, italics added.) "[E]vidence of causation 'must rise to the level of *a reasonable probability based upon competent testimony.* [Citations.] "A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." [Citation.] The defendant's conduct is not the cause in fact of harm " 'where the evidence indicates that there is less than a probability, i.e., a 50-50 possibility or a mere chance,' " that the harm would have ensued.' " (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 312 (*Bowman*).)

"Where there is evidence that the harm could have occurred even in the absence of the defendant's negligence, 'proof of causation cannot be based on mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion unsupported by any real evidence.' " (*Padilla v. Rodas* (2008) 160 Cal.App.4th 742, 752 (*Padilla*).)

Although "[t]he plaintiff . . . 'need not prove causation with absolute certainty[,]' " it must at least " ' " 'introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.' " ' " (*Garbell v. Conejo Hardwoods, Inc.* (2011) 193 Cal.App.4th 1563, 1569.) " '[P]roof that raises mere speculation, suspicion, surmise, guess or conjecture is

12

not enough to sustain [the plaintiff's] burden' of persuasion." (*Izell v. Union Carbide Corporation* (2014) 231 Cal.App.4th 962, 969.)

Although there is no question that a plaintiff may establish causation by relying solely on circumstantial evidence, a plaintiff attempting to do so must still satisfy the standards set forth above. "In deciding whether a plaintiff has met her burden of proof, we consider both direct and circumstantial evidence, and all reasonable inferences to be drawn from both kinds of evidence, giving full consideration to the negative and affirmative inferences to be drawn from all of the evidence, including that which has been produced by the defendant. . . . [¶] We will not, however, draw inferences from thin air. Where . . . the plaintiff seeks to prove an essential element of her case by circumstantial evidence, she cannot recover merely by showing that the inferences she draws from those circumstances are *consistent* with her theory. Instead, she must show that the inferences favorable to her are *more reasonable or probable* than those against her." (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 483, citations omitted (*Leslie G.*).)

> 3. *Cequent Showed That Sumaya Could Not Establish a Reasonable Probability That a Defect in the Tow Hitch Assembly Was a Substantial Cause of Her Injuries, as Sumaya's Theory of How the Draw Bar Ended Up on the Freeway Was Based Purely on Speculation*

Based on the standards for legal causation that we have discussed above, Sumaya would have been required at trial to prove a *reasonable probability* that the draw bar ended up on the freeway because of a design defect or failure to warn, and, as a result, was present on freeway lanes and crashed through Yang's windshield, injuring Sumaya.

13

(*Bowman*, *supra*, 186 Cal.App.4th at p. 312.)  To do so, Sumaya would, of course, have to establish a *reasonable probability* that the draw bar was inserted into a receiver hitch installed on a vehicle that was driving on the freeway and that it became disengaged from the receiver hitch and ended up on the freeway.  As we have discussed, Sumaya cannot carry her burden of proof by establishing a *mere possibility* that the draw bar disengaged from a receiver hitch on the freeway (*Ortega*, *supra*, 26 Cal.4th at p. 1205), and it is not sufficient for Sumaya to rely on *speculation* or *conjecture* that the draw bar ended up on the freeway in that manner.  (*Padilla*, *supra*, 160 Cal.App.4th at p. 752.)  She must establish it is *more likely than not* that the draw bar was located on the freeway because it disengaged from a receiver hitch.  (*Ortega*, at p. 1205.)

Cequent met its initial burden on summary judgment to show Sumaya's inability to establish causation by relying on Sumaya's discovery responses.  (See *Aguilar*, *supra*, 25 Cal.4th at p. 855 [To meet its initial burden, "[t]he defendant may . . . present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence — as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing."].)  In those discovery responses, Sumaya admitted that she did not know how the draw bar ended up on the freeway but stated that she *believed* it was attached to a tow vehicle and disengaged on the freeway.  When asked to set forth the evidence that supported her belief, Sumaya's discovery responses pointed to documents, such as the traffic collision report, photographs of the draw bar, and Sumaya's medical records, that contain no information indicating where the draw bar came from.  Based on these discovery responses, the trial court properly determined that Cequent met its initial

14

burden to establish that Sumaya could not establish causation. Sumaya's responses to discovery show that any finding as to how the draw bar ended up on the freeway would be completely speculative and not meet the standard of establishing causation by a reasonable probability.

After the burden shifted to her to establish a triable issue of material fact, Sumaya did not identify admissible evidence creating a triable issue regarding causation. Sumaya attempted to rely on statements in Jones's declaration opining that the only rational explanation for the draw bar's presence on the freeway was that it vibrated out of a receiver hitch, but as we have explained, the trial court properly sustained Cequent's evidentiary objections to those portions of Jones's declaration.

In her appellate argument, relying on little more than the fact that the draw bar was located on the freeway with no clear indication of how it got there, Sumaya argues that the circumstantial evidence supports a finding that it is *more likely than not* that the draw bar ended up on the freeway because it disengaged from a receiver hitch. As Sumaya phrases the argument, she believes that, under the circumstances, there is more than an "equal probability" that the draw bar disengaged from a receiver hitch. We disagree. There are a myriad of possible ways that the draw bar could have ended up on the freeway. Using common sense, one very plausible explanation — which is not even acknowledged in Jones's declaration — is that the draw bar was inadvertently left on an unprotected area of a vehicle, such as a bumper, a roof or the edge of flatbed truck, and the driver inadvertently drove onto the freeway where the draw bar eventually fell off. Other possibilities, as Jones discusses and fails to persuasively discount, are that the draw

15

bar could have been intentionally thrown onto the freeway, could have been poorly packed into a truck that was transporting it, or could have ended up on the freeway shoulder during a serious accident and was eventually kicked up by someone driving on the shoulder.[3]  With a complete absence of any indication of where the draw bar came from, Sumaya is simply unable to identify circumstantial evidence that makes any one of these scenarios more plausible than another.

"Although proof of causation may be by direct or circumstantial evidence, it must be by 'substantial' evidence, and evidence 'which leaves the determination of these essential facts in the realm of mere speculation and conjecture is insufficient.' " (*Leslie G.*, *supra*, 43 Cal.App.4th at p. 484.)  The circumstances of Sumaya's injury are undeniably tragic, but because there is no evidence of how the draw bar ended up on the freeway, it would be complete speculation and conjecture for any trier of fact to conclude

---

[3]     In support of her argument that circumstantial evidence supports a finding that it is reasonably probable that the draw bar ended up on the freeway after disengaging from a receiver hitch, Sumaya lists several purported facts that are not supported by any evidence in the record other than that they appear in the portions of Jones's declaration to which the trial court sustained Cequent's objections.  Moreover, some of those purported facts are contradicted by common sense or are completely speculative.  For example, relying on the portions of Jones's declaration to which objections were sustained, Sumaya states that "the draw bar was too heavy to throw from the side of the road" and "[t]he draw bar is too heavy to have been kicked up from the side of the road because vehicles do not travel fast enough in the shoulder to allow for the occurrence."  Sumaya also states that "[t]he draw bar is too heavy to bounce out of a vehicle[,]" but overlooks the possibility that the draw bar could have been placed on an unprotected part of a vehicle, such as a bumper, a roof or the edge of a flatbed truck or on top of a precariously-stacked load, and could have fallen off through subsequent freeway vibrations and bumps.

that, because of a product defect, the draw bar disengaged from a receiver hitch on the freeway and injured Sumaya.

To support her causation argument Sumaya cites several cases, but none of them are applicable because, in each, the plaintiff presented evidence from which a finder of fact could determine that it was *reasonably probable* that the defendant's alleged tortious conduct caused the plaintiff's injury, and was not just — as here — *merely possible* based on *speculation*.

One of the cases on which Sumaya focuses most heavily is *Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1292 (*Chavez*).  In *Chavez*, the plaintiff was accidently shot by his three-year-old son with a gun, and he alleged — among other things — that one cause of the accident was that the manufacturer did not design the gun with a trigger that required the application of more pressure than a small child would be able to apply. *Chavez* concluded that the issue of causation should be tried to a jury rather than resolved on summary judgment because it was not unduly speculative whether the accident could have been prevented by a different trigger design.  *Chavez* explained that although direct evidence was not available about how the child fired the gun, "it is neither impossible to prove causation nor is proof on this issue necessarily speculative" because "[t]he hand size and grip strength of children are readily measurable[,]" and "a child's ability to pull a trigger of various trigger pull strengths is measurable."  (*Id*. at p. 1307.)  As *Chavez* pointed out, based on that evidence "[a] jury could reasonably infer from this information whether a heavier trigger would have reduced or avoided the risk of harm in this case." (*Ibid*.)  Here, in contrast, because of the complete absence of evidence regarding how the

17

draw bar ended up on the freeway, it is it impossible for Sumaya to prove whether her injury could have been prevented had Cequent designed the tow hitch assembly differently or provided a warning. Unlike in *Chavez*, this is a case in which "it is . . . impossible to prove causation" and "proof on this issue [is] necessarily speculative" (*Ibid.*)

Similarly, Sumaya relies on *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112 (*Campbell*) for its statement that " '[i]t is not incumbent upon a plaintiff to show that an inference in his favor is the *only* one that may be reasonably drawn from the evidence; he need only show that the material fact to be proved may logically and reasonably be inferred from the circumstantial evidence' " (*id.* at p. 121, italics added), and that "[t]o take the case from the jury simply because the plaintiff could not prove *to a certainty* that the device would have prevented the accident" is improper (*ibid.*, italics added). However, Sumaya overlooks the crucial difference between this case and *Campbell*, namely the presence of circumstantial evidence relating to the cause of plaintiff's injury. In *Campbell* the issue was whether the plaintiff, who was injured when riding a bus, could establish that her injury could have been prevented had the manufacturer installed handrails inside the bus. There was ample evidence of the details of the accident. "Plaintiff testified that she was injured when thrown from her seat to the floor on the opposite side of the bus. She further testified that before falling she reached out with both arms for something to hold on to, but nothing was there. Given plaintiff's position at the time the bus turned, a jury could reasonably infer from the evidence that a handrail or guardrail within her reach would have prevented the accident. Although this fact may not

18

be capable of mathematical proof, it is nevertheless a reasonable inference that may be drawn from the evidence." (*Id*. at p. 122.) In Sumaya's case, in contrast, the crucial details of how the draw bar ended up on the freeway are not known. Therefore, the issue is not simply whether Sumaya has to prove *to a certainty* or with *mathematical proof* that her injury was caused by a product defect in the tow hitch assembly. Instead, unlike in *Campbell*, the issue is whether, *without any evidence at all* of how the draw bar ended up on the freeway, a jury can be allowed to speculate as to causation. As we have explained, case law is clear that to establish causation a plaintiff must rely on more than speculation, conjecture or mere possibility. (See *Bowman*, *supra*, 186 Cal.App.4th at p. 314 [concluding that the plaintiff did not establish that a reasonable jury could have concluded that allegedly defective brakes were "the probable cause of the accident" because "although proof of causation may be by circumstantial evidence, it must be by ' "substantial" evidence, and evidence "which leaves the determination of these essential facts in the realm of mere speculation and conjecture is insufficient" ' "].)

Finally, *Dimond v. Caterpillar Tractor Co.* (1976) 65 Cal.App.3d 173 (*Dimond*) is another case that Sumaya relies on, but which is inapposite because the plaintiff in that case — unlike here — was able to identify circumstantial evidence showing that plaintiff's theory of how the accident occurred was not only possible, but the *most probable* explanation of what occurred. Specifically, in *Dimond* the plaintiff worked in a warehouse where heavy paper rolls fell onto him, and he was found on the ground next to a forklift that he had been assigned to operate. (*Id*. at pp. 177-178.) Although the plaintiff had amnesia due to his injuries and there were no other witnesses to the accident,

19

the plaintiff contended that the accident happened while he was operating a forklift manufactured by the defendant, and that because of an ambiguous warning on the forklift's protective cage that it would not withstand heavy loads, he bolted from the cage rather than staying protected inside the cage when the paper rolls began to fall on him. (*Id*. at p. 181.) The defendant argued that the plaintiff could not prove causation because it was possible that the plaintiff was not operating the forklift when the paper rolls fell on him, as he simply may have been standing near the forklift when the paper rolls began to fall. *Dimond* concluded that "[t]here was sufficient circumstantial evidence from which the jury could reasonably infer that plaintiff bolted [from the forklift] when he saw the stack of paper falling and was struck as he was trying the flee the machine" (*ibid*.), and, moreover, that plaintiff's theory was the most probable scenario.[4] Based on the circumstantial evidence, *Dimond* concluded that although "[t]here may be *other possible, though hardly probable*, explanations why plaintiff was where he was when struck by the stack of paper[,]" "[t]he known facts and circumstances *most strongly suggest* that plaintiff was in the [forklift] but abruptly abandoned it when the rolls of paper began falling." (*Id.* at p. 182, italics added.) In such a case, "[t]he mere fact that other inferences adverse to plaintiff might be drawn does not render the inference favorable to

---

[4]    As *Dimond* explained the circumstantial evidence supporting its conclusion, shortly before the accident the plaintiff had been instructed to transport some paper rolls; the forklift was found near where such paper is stored; the forklift was in neutral gear with the engine still running; plaintiff always turned off the engine when dismounting the forklift; there was a dent in the forklift's protective cage after the accident which was not present earlier; and plaintiff was found face down near the back of the forklift with his feet closest to it. (*Dimond*, *supra*, 65 Cal.App.3d at p. 182.)

plaintiff too conjectural or speculative for consideration." (*Ibid.*) Here, in contrast, the circumstantial evidence does not point to a single explanation for the draw bar ending up on the freeway that is more probable than other possible explanations, and thus any such inference would be too speculative to support a causation finding. This is simply not a case like *Dimond*, or the others cited by Sumaya, in which "[t]he known facts and circumstances *most strongly suggest*" that Sumaya's theory of how the draw bar came to be located on the freeway is the most probable explanation. (*Ibid.*)[5]

In sum, we conclude that because Sumaya was unable to identify any admissible evidence that would allow a jury to reach a reasonable inference that the draw bar most probably came to be located on the freeway after disengaging from a receiver hitch, or due to any other failure of the tow hitch assembly, Sumaya failed to meet her burden of showing that a triable issue of material fact existed on the element of causation for both of her causes of action. Accordingly, the trial court properly granted summary judgment in favor of Cequent.

---

[5]    Sumaya cites *Vandermark v. Ford Motor Co.* (1964) 61 Cal.2d 256 and *Elmore v. American Motors Corp.* (1969) 70 Cal.2d 578 for the proposition that causation that a product defect caused an injury may be proven by circumstantial evidence when direct evidence is not available. However, those cases, just like *Chavez*, *Campbell* and *Dimond*, do not advance Sumaya's argument because the problem here is not simply that direct evidence is unavailable. Instead, in this case, even when the circumstantial evidence is considered, there is simply no basis for an inference that it is more likely than not that the draw bar ended up on the freeway because it disengaged from a receiver hitch.

21

DISPOSITION

The judgment is affirmed.  In the interests of the justice, the parties shall bear their respective costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.