Filed 6/6/25   Poppink v. Estate of Assin CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JOANNA POPPINK, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ESTATE OF SALLY ASSIN, et al., <br><br> Defendants and Respondents. | B330692 <br><br> Los Angeles County <br> Super. Ct. No. BC709341 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael B. Harwin, Judge.  Affirmed.

The Novak Law Firm and Sean M. Novak for Plaintiff and Appellant.

Horvitz & Levy, Robert H. Wright, John B. Sprangers; Cullins & Grandy, Allison L. Grandy and Michael J. Lowell for Defendants and Respondents.

————————————

Causation is a quintessential jury question. Joanna Poppink appeals the trial court's refusal to take this question away from the jury through its denial of her motion for directed verdict on this issue, its giving of CACI instruction No. 430, and its denial of a motion for a new trial. We affirm.

I

On June 15, 2016, Poppink was driving her Prius on Overland Avenue in Los Angeles on her way home from Trader Joe's. Sally Assin was the passenger in a Toyota Avalon in the lane to the left of Poppink. Pancho Balaba, Assin's driver, tried to merge into Poppink's lane and sideswiped her car, hitting the area near the front wheel well and bumper of the driver's side of Poppink's car. Poppink was going about two to three miles per hour. At trial, Poppink, for the first time, testified there were two impacts. After the first impact, Poppink tried to open her door but could not, so she rolled down her window to tell Balaba to back up. He instead went forward again, hitting her car a second time, before backing up. Poppink then got out of her car and exchanged information with Balaba and Assin. Poppink then returned to her car and drove home.

Poppink testified she was in shock when she got home and spent the next two weeks convalescing and icing the parts of her body that hurt. Poppink is a psychotherapist and conceded she continued working for the next two weeks. About nine days after the accident she attended a graduation at the University of California at Los Angeles. Five days later, she went to her chiropractor. She told him she had injured the right side of her neck, her right shoulder, her right thigh, her right knee, the right and middle of her back, and her left arm in the accident.

A jury trial commenced in 2023, about seven years after the accident. Poppink had two medical experts testify about treatments she received for her neck, back, hip, and right knee since the accident, including a hip replacement. Each expert testified the treatments were necessary because of a harm the accident caused. Psychologist Dr. Stephan Poulter testified that the accident had caused Poppink to develop post traumatic stress disorder and generalized anxiety.

The defense experts denied the accident caused the claimed injuries. Defense forensic psychiatrist Dr. Marc Cohen disputed Poulter's diagnoses, stating the accident did not constitute an objective life-threatening event as required for a PTSD diagnosis and generalized anxiety cannot be caused by a single event.

We excerpt relevant portions of the testimony of Dr. Ronald Kvitne, a defense orthopedic surgeon, because they form the basis for Poppink's appeal.

"Q: Do you have any opinions with regards to what injuries, if any, Ms. Poppink may have sustained to the spine as a result of this accident?
"A: Yeah. Minor sprain, strain, injuries to the neck and back." […]
"Q: So if we're talking about the injuries, in your opinion, that were caused by this accident to Ms. Poppink, what treatment would be reasonable to treat those injuries?
"A: For the neck and back and the knee, I would give her 24 visits of therapy, spread out over 12 weeks, so that's $3,600. Then after that they're put in a home program. So if they do the home exercises, they get their motion back, they get their strength back, they get their posture and

core strength in terms of neck and back, back to where it should be. In terms of her knee, she will get her motion back, her strength back and the inflammation around the kneecap will disappear as well." […]

"Q: Yeah; and you do agree to a reasonable medical probability that this accident of June 15, 2016, caused at least some injury to Ms. Poppink; correct?

"A: I think it caused more symptoms than it did physical trauma where there's anatomical change of her body.

"Q: But those symptoms are injury?

"A: It would imply some minor injury; yes.

"Q: You believe to a reasonable medical probability it was appropriate for her to have some chiropractic physical therapy care after the accident; correct?

"A: That's correct.

"Q: You said it was reasonable, in your opinion, to have at least – you said 12 weeks of physical therapy or chiropractic care?

"A: Yes." […]

"Q: So as of your deposition, February 21st, 2022, when you told me you didn't believe the knee injury was related to this accident, you didn't know what Ms. Poppink had related in deposition about what had happened.

"A: No, there's a difference. [¶] The knee injury was related to this accident, but the meniscus tears were not.

"Q: Okay. So there's a knee injury, but you don't believe the meniscal tears are related to the accident.

"A: That's correct." […]

4

"Q: With Ms. Poppink, based on your review of records, you saw that she did, in fact, sustain trauma to the right knee from this accident.

"A: Yes, minor soft tissue contusion." […]

"Q: And so whether there was bruising when Ms. Poppink went to the chiropractor a few weeks after this accident, does that make may [sic] difference, in your opinion?

"A: No. It just tells me that she had some contact of her knee inside something inside the car. But, again, the accident photographs would indicate that there is very little forces involved."

At the close of evidence, Poppink moved for a directed verdict on the issue of whether the accident was a substantial factor in causing her injuries. The parties briefed the issue for the trial court. The court denied the motion. Poppink objected to CACI No. 430, which states: "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm." Because the court overruled Poppink's request in her motion for a directed verdict that it take this question away from the jury, it overruled her objection to giving the instruction about the issue.

After deliberation, the jury returned a verdict finding defendants' negligence was not a substantial factor in causing Poppink's harm. Poppink moved for a new trial. The trial court denied the motion. Poppink appeals.

II

The gist of Poppink's argument is that Kvitne admitted the accident caused Poppink "some" injury. Therefore, there was no evidence the accident did not cause some injury, and the jury

5

should not have been allowed to answer that question. Each of Poppink's allegations of error – denial of the motion for directed verdict, giving CACA No. 430, and denial of the motion for a new trial – rests on this premise. Because Poppink is wrong, each of her claims fails.

A

Poppink argues that, because every medical expert to opine on the issue of whether the accident caused her some injury said it had, the jury had no choice but to accept that answer. This is not so. The jury knew that the opinions of the medical experts depended on the information Poppink herself gave them. This was especially true of Kvitne. Kvitne testified that the type of accident Poppink was in *may* lead to mild sprains or strains and minor soft tissue contusion. He testified that such injury would be resolved within a few months of the accident. Kvitne did not examine Poppink until about three and a half years after the accident. Thus, any testimony about the mild injuries Poppink *may* have sustained from the accident could only have been based on reports from Poppink. And, as the excerpts from Kvitne's testimony above show, the injury he referenced Poppink suffered was basically a bruise.

Determining the credibility of witnesses, including the plaintiff, is the exclusive province of the jury. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) The jury did not have to believe Poppink's testimony or that the information she provided the doctors was truthful. The jury heard testimony that Poppink was able to drive home from the accident and resumed her normal work schedule, in addition to attending a graduation, over the following two weeks. If the jury did not find Poppink's reports to her doctors about her injuries credible, it was not required to

6

accept the medical opinions those doctors formed based on those reports.

The defense highlighted several inconsistencies in Poppink's testimony. Poppink testified she had not been symptom free from any injuries caused by the accident, but later testified her shoulder no longer hurt and mentioned no pain in her hip three and a half years later. There was also evidence Poppink suffered hip pain and osteoarthritis before the accident and fell on her knee twice after the accident. Poppink testified pain from the accident limited her walking and indoor cycling, but also posted on social media about "a joyous romping Saturday afternoon for all three of us [Poppink and her two dogs]" and several rides on consecutive days. Poppink was 81 years old at the time of the trial.

The jury also heard that Poppink's attorneys referred her to her medical experts and those providers provided her medical services on a lien basis, meaning they had a financial stake in the outcome of the trial. Therefore, the jury was fully entitled to find as it did, regardless of any testimony by Kvitne affirming some injury from the accident.

Poppink argues against this result by asserting the jury may not disregard uncontradicted expert testimony. (*Krause v. Apodaca* (1960) 186 Cal.App.2d 413, 417.) This blanket statement misses important nuances. A more complete version of the rule is that the jury is not entitled to disregard uncontradicted expert testimony *arbitrarily*. (*Ibid*.) But "[t]he jury is not required to accept an expert's opinion. The final resolution of the facts at issue resides with the jury alone." (*Reynaud v. Technicolor Creative Servs. USA, Inc.* (2020) 46 Cal.App.5th 1007, 1018.) In determining whether to accept an

expert's opinion, the jury considers whether the facts necessary to support the opinion have been adequately proven. (*People v. Sanchez* (2016) 63 Cal.4th 665, 675.) Even where a party proves the facts, the jury may reject the opinion if it finds the opinion is based on faulty logic or unreliable information. (*Ibid.*)

In certain cases, the complexity of the medical issues involved may preclude the jury from reaching its own conclusions. In others, the issues may involve more familiar situations in which a jury can properly apply its own common sense and experience. Poppink cites a case that makes this exact distinction. In *Espinosa v. Little Co. of Mary Hospital*, the court noted, "This is not a simple automobile accident where the jury is able to use their own common sense and experience to balance the facts relating to concurrent causation. It is for this reason that 'causation must be proved within a reasonable medical probability based on competent expert testimony.' " (*Espinosa v. Little Co. of Mary Hospital* (1995) 31 Cal.App.4th 1304, 1316 fn. 6.) Rather, in *Espinosa*, the jury was determining whether a doctor's prenatal medical malpractice had caused the plaintiff's brain damage. (*Id.* at pp. 1308–1309.) Here, on the other hand, we have a simple automobile accident, the kind where the court noted the jury can properly apply their own common sense and experience.

Poppink's reliance on *Moore v. Mercer* (2016) 4 Cal.App.5th 424 is misplaced. Like our case, *Moore* involved a traffic accident. (*Id.* at p. 430.) Upon impact, Moore's car spun about 45 degrees, and she experienced a major impact. (*Ibid.*) Moore eventually had surgery to replace a disc in her spine as a result of her injuries. (*Id.* at p. 431.) The defendant's expert agreed the

8

disc protrusion requiring the surgery was a result of the accident. (*Id*. at p. 449.) The jury heard no contradictory evidence. (*Ibid*.)

To analogize to *Moore* here, Poppink focuses on Kvitne's "admission" that her knee injury was the result of the accident. However, Kvitne makes clear the injury he believes the accident could have caused to Poppink's knee was a soft tissue contusion, "like a bump or a bruise on the knee." Evidence of a bruise comes from Poppink's report and a note allegedly in a non-testifying doctor's records. There was no evidence whether the non-testifying doctor saw the bruise or documented it because Poppink reported it. Unlike in *Moore*, there is not a single injury and treatment at issue. Poppink seeks compensation for seven years of medical treatment for her knee (and several other body parts), including platelet rich plasma injections. The jury could believe that treatment was unrelated to a bruise. An MRI taken shortly after the accident showed meniscal tears in Poppink's knee. Kvitne testified such tears could not have been from the accident. Thus, if the jury credited Kvitne's testimony, they could believe Poppink's medical treatment for her knee did not relate to any soft tissue contusion suffered in the accident. The jury could permissibly conclude that Poppink may have suffered a bruise in the accident, which would not have required medical treatment and would have resolved in the two weeks before she sought medical treatment.

B

Poppink moved for a directed verdict on the issue of causation because she believed the evidence left no question of whether the accident was a substantial cause of her injuries based on the trial testimony.

9

We independently review a denial of a motion for directed verdict. (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1154.)

As detailed above, contrary to Poppink's assertion, the testimony did not foreclose the jury's ability to reject the proposition that the accident was a substantial cause of the injuries she claimed. Therefore, the trial court did not err in denying Poppink's motion for a directed verdict on that issue.

For the same reason, the special verdict form that asked the jury the question the trial court ruled should go to the jury was not erroneous.

C

Poppink argues the trial court erred in giving CACI No. 430 about whether the accident was a substantial cause of her claimed injuries because the evidence did not allow it to find it was not. Poppink argues this instruction allowed defense counsel to make improper arguments and because, in Poppink's view, the verdict was insupportable, the improper argument must be to blame.

We independently review alleged instructional error. (*Strouse v. Webcor Construction, L.P.* (2019) 34 Cal.App.5th 703, 713.)

As discussed at length above, Poppink's contention is inaccurate. The evidence did not allow for only one answer to the question of whether the accident was a substantial factor in causing her claimed injuries, and therefore it was proper for the trial court to provide this instruction to the jury. This also disposes of Poppink's assertion that "improper argument" was the only potential rationale for the verdict.

10

## D

After the jury returned its verdict finding the accident was not a substantial cause of Poppink's injury, she moved for a new trial.

We review a trial court's ruling on a motion for a new trial for abuse of discretion.  (*Horsford v. Board of Trustees of California University* (2005) 132 Cal.App.4th 359, 379.)  We evaluate a contention that the evidence did not support the verdict to determine if the record contains substantial evidence.  (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 614.)

Poppink based her motion on the premise that the jury's verdict was improper because it was contrary to the evidence.  As explained, the verdict was consistent with the evidence.

Poppink further argued the damages the jury awarded were inadequate, there were irregularities in the proceedings, and the evidence was insufficient to justify the verdict.  Each of these arguments relates to the same contention we have rejected: the damages were inadequate because the jury should not have been allowed to find no causation; the proceedings were irregular because the trial court gave instruction CACI No. 430, allowed argument on it, and included the causation question on the special verdict form; and the evidence was insufficient because the jury should have found causation.  Because the core premise is faulty, each argument fails.

Therefore, the trial court did not err in denying Poppink's motion for a new trial.

//

//

## DISPOSITION

We affirm the judgment and award costs to respondents.


WILEY, J.

We concur:


STRATTON, P. J.


MATTHEWS, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.